942 A.2d 864 (2008)
399 N.J. Super. 40
NEW JERSEY CITIZENS UNDERWRITING RECIPROCAL EXCHANGE, Plaintiff-Respondent
v.
Kieran COLLINS, D.C., LLC and Open MRI of Clifton, Defendants-Appellants, and
Union Medical, LLC and Leocadia Nunez, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 2008.
Decided March 18, 2008.
Jamie S. Aretsky, argued the cause for appellants (Joseph A. Massood, attorney, Wayne; Mr. Aretsky, on the brief).
Jacob A. Papay, Jr., Clinton, argued the cause for respondent (Gebhardt & Kiefer, attorneys; Mr. Papay, on the brief).
Before Judges COLLESTER, C.S. FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
FISHER, J.A.D.
This appeal requires that we once again consider whether or to what extent we have jurisdiction to review a trial court's decision to modify or vacate an arbitration award rendered pursuant to The New Jersey Alternative Procedure for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -30.
Plaintiff New Jersey Citizens Underwriting Reciprocal Exchange (plaintiff) filed this action, seeking to upset a ruling made by an arbitrator in favor of defendant Kieran Collins, who medically treated Leocadia Nunez, Eriberto Carrero, Sr., *865 and their minor child, Eriberto Carrero, Jr., as the result of two separate automobile accidents. The record reveals that Eriberto Carrero, Sr. (Eriberto) applied on March 29, 2002 and obtained an automobile insurance policy from plaintiff. At that time, and on each renewal application, Eriberto represented to plaintiff that he was single and lived alone when, in fact, he married Leocadia Nunez (Leocadia) on March 23, 2002.
Leocadia was injured in an accident that occurred on December 6, 2004 while she was operating Eriberto's vehicle. As a result, she sought benefits based on the policy issued by plaintiff. Eriberto and his son sought benefits against the same policy as a result of an automobile accident that occurred on December 13, 2004.
During the course of processing these claims, plaintiff obtained recorded sworn statements from Eriberto and Leocadia regarding their residency and marital status. Based upon their inconsistent statements, plaintiff examined further whether Eriberto made materially false statements in applying for automobile insurance on March 29, 2002, or when he annually applied for the policy's renewal. Ultimately, plaintiff took the position that the policy should be declared void ab initio because Eriberto materially misrepresented: (a) he was single  when in fact he married Leocadia on March 23, 2002, six days before the original application; (b) no one else lived with him  when in fact Leocadia lived with him; and (c) he was the only operator of the insured vehicle  when in fact his resident spouse, Leocadia, operated the vehicle. Based on this assessment, plaintiff did not pay defendants' bills as they were submitted.
As a result, defendant Collins, as assignee of Eriberto and the child, filed arbitration demands with the National Arbitrations Forum (NAF) on July 19, 2005; and, as assignee of Leocadia, Collins filed an arbitration demand with the NAF on August 11, 2005. Plaintiff appeared in those matters and timely requested their consolidation because they were filed by the same petitioner, sought benefits under the same policy and during the same coverage period, and were subject to the same defenses even though the claims involved two separate auto accidents. NAF Dispute Review Professional Johnston (DRP Johnston) denied the request for consolidation, although the two matters involving Eriberto and the child (hereafter "the Eriberto arbitration"), which arose from the same auto accident, were assigned to and handled together by DRP Johnston; the arbitration regarding the services rendered on Leocadia's behalf (the Leocadia arbitration) was assigned to and heard by DRP Carr.
The Eriberto arbitration was the first to be reached. DRP Johnston heard and considered the conflicting testimony of Eriberto and Leocadia, as well as other evidence, regarding their residency and marital status. In her written decision of July 11, 2006, DRP Johnston made the following findings:
[Plaintiff's] position is that [Eriberto] was the named insured under [the] auto insurance policy issued by [plaintiff]. A claim for PIP benefits was filed on behalf of him and his son for injuries allegedly sustained in an auto accident on December 13, 2004. In the December 13, 2004 accident the policy holder was driving his 1994 Ford Explorer which was involved in an accident. His son was a front seat passenger at the time of the loss. The problem comes into play with the policy holder information provided.
The address noted on the police report for [Leocadia] also involved in a prior accident was 77 Brook Avenue, *866 Apartment A18, Passaic, New Jersey. [Leocadia] stated that she had known [Eriberto] for two years, had just moved in with him in November 2004 and that they had one child together. She advised that it had been the first time to use his vehicle and that a prior address was with her mother at 381 Lafayette Street, Passaic, New Jersey. [Eriberto] stated in a recorded statement that in fact he lived with [Leocadia] at the time of the accident and had lived with her for approximately seven or eight months. He stated that she had the use of . . . either of his vehicles approximately once a week. The carrier ran a search that indicated that [Leocadia] resided with the policy holder since September of 2002. Additionally in a statement under oath [Leocadia] advised that she had been married [to Eriberto] on March 23, 2002. Thereafter she denied this in [the] recorded statement [she gave to plaintiff].
[Plaintiff] relied on the affidavit of no insurance submitted by [Leocadia]. The address listed was 77 Brook Avenue, Apartment A18, Passaic. [Plaintiff's] Exhibit 8 includes [Leocadia's] tax returns for years 2001 through 2004. For tax year of 2002 and 2003 her address is listed as 77 Burke Avenue, Apartment A18. Each year she is listed as living with [Eriberto].
In a statement under oath taken by [Eriberto] on February 6, 2006 he stated that he married [Leocadia] on March 23, 2002 and that after the marriage she lived with him for approximately one month and then they split up and she went to live with her mother. [Plaintiff] points out that this is in direct contradiction to the earlier recorded statement where he advised that he was living with his "girlfriend" for eight months prior to December 2004. When questioned about this at the time of the statements as well as at the arbitration hearing itself, [Eriberto] went on to say that it was another girl who didn't really live with him but stayed with him occasionally and he could not remember her last name. When referred to the prior statements he had made he advised that in fact it was his present wife [Leocadia] who he was referring to but she was not living with him at the time.
[Plaintiff] submits further Exhibit K, the leases for apartment rented by [Eriberto]. It indicates that he moved to a bigger apartment on Brook Avenue following his marriage to [Leocadia]. [Plaintiff] charges that clearly [Eriberto] has made material misrepresentation[s] to his insurance [company] by not indicat[ing] that he is married and by not listing his wife as his spouse and as a licensed driver in the household. [Plaintiff] indicates that in fact the policyholder had made changes on his policy when he added an additional vehicle in January of 2004. At that time no additional drivers or residences were listed.
After considering this evidence, DRP Johnston concluded that Eriberto had materially misrepresented or omitted material facts when applying for and renewing the policy, and held that plaintiff properly refused coverage:
Although [Collins's attorney] advises that it is "crystal clear" that the parties lived apart I must disagree. I found the testimony of [Eriberto] to be less than candid. Additionally the proofs upon which [plaintiff] relies are convincing. The testimony is confusing and overlapping, but [Leocadia] did file her tax returns for the years in question as being a spouse of [Eriberto] and residing with him at the [Brook] Avenue apartment. She gave the date of the marriage as preceding the accident date and they have not been divorced to date. *867 The fact that the marriage had problems is unfortunate but [plaintiff] fairly relied on the documentation submitted. Whether or not [Eriberto] considered him[self] to be single, he was not [single] and at the time of the application should have provided the proper information. Accordingly I find that . . . [plaintiff] properly denied coverage [regarding Eriberto]. This portion of the demand is denied.
For reasons not relevant here, DRP Johnston granted relief on the claim asserted by defendant Collins as assignee of the minor child.
After the record closed in the Eriberto arbitration, but prior to DRP Johnston's decision, the parties provided their submissions in the Leocadia arbitration to DRP Carr. On June 30, 2006, Collins provided a post-hearing submission to DRP Carr, arguing for the first time that plaintiff should be estopped from denying coverage because it had allegedly failed to make a timely coverage eligibility determination pursuant to N.J.A.C. 11:3-25.4(f). Eleven days later DRP Johnston rendered her written decision in the Eriberto arbitration; within the week, plaintiff wrote to the NAF. By way of its letter, plaintiff enclosed a copy of DRP Johnston's decision and requested that it be considered by DRP Carr; in addition, plaintiff again urged that these matters be considered together because the coverage issues regarding Leocadia were closely intertwined with, if not entirely dependent on, the issues decided by DRP Johnston. The NAF refused, stating that the record in the Leocadia arbitration had closed on June 31, 2006, and "[t]herefore [plaintiff's submission of DRP Johnston's ruling] is untimely and will not be sent to [DRP Carr] for consideration."
On August 7, 2006, DRP Carr ruled in favor of Collins in the Leocadia arbitration. He did not determine whether Leocadia should be denied coverage because she was the resident spouse, whose identity was not disclosed to plaintiff at the time of the original insurance application or any following renewals. Indeed, DRP Carr did not consider the significance of the Court's holding in Palisades Safety & Ins. Assoc. v. Bastien, 175 N.J. 144, 150-52, 814 A.2d 619 (2003), and its applicability to the claim. Instead, DRP Carr concluded that plaintiff was estopped from denying coverage due to a breach of N.J.A.C. 11:3-25.4(f).
Plaintiff thereafter filed an appeal to the NAF, arguing as error, among other things: the failure to consolidate the arbitrations; NAF's refusal to submit plaintiff's reply to Collins's belated contention that plaintiff should have been estopped from denying coverage; NAF's refusal to refer DRP Johnston's decision in the Eriberto arbitration to DRP Carr for consideration in the Leocadia arbitration; and DRP Carr's failure to consider or rule upon the coverage issue from Leocadia's standpoint, in light of Eriberto's material misrepresentations and omissions in the policy application and renewals. The NAF appeal panel rejected these contentions by way of a written opinion.
As a result, plaintiff commenced this action in the Law Division, seeking the vacation, modification or correction of DRP Carr's determination in the Leocadia arbitration, and raising the same arguments rejected by the NAF appeal panel. The trial judge found plaintiff had been prejudiced by the fact that the two arbitrations were permitted to be decided at different times by different arbitrators. Although the inefficiency of this approach did not alone prejudice plaintiff, once the arbitrators reached inconsistent decisions prejudice clearly accrued. Due to its inconsistency with DRP Johnston's findings *868 of fact in the Eriberto arbitration, the judge concluded that the determination in the Leocadia arbitration could not stand and ruled that defendant's claim should suffer the same fate as Eriberto's claim, citing Palisades Safety & Ins. Assoc., supra, 175 N.J. at 150-52, 814 A.2d 619. A final order favorable to plaintiff was entered by the judge on February 22, 2007.
Defendant Collins appealed the February 22, 2007 order to this court,[1] arguing that the trial judge erred and misapprehended the limited authority he possessed in reviewing arbitral decisions. The overarching question that we must consider, however, is whether we have jurisdiction to intervene in this dispute.[2]
Whether we have jurisdiction to hear this appeal turns on the meaning of N.J.S.A. 2A:23A-18(b), which states:
Upon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree. There shall be no further appeal or review of the judgment or decree.

[Emphasis added.]
Plaintiff argues that this statute precludes our review of the trial judge's decision.
This argument is not novel. In considering the scope of N.J.S.A. 2A:23A-18(b), the Supreme Court held in Mt. Hope Dev. Assocs., EAJ, Inc. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 152, 712 A.2d 180 (1998), that there are exceptions to the Legislature's declaration in N.J.S.A. 2A:23A-18(b) that "[t]here shall be no further appeal or review" of a judgment that modifies or corrects an arbitration award. For example, the Court held that APDRA's general elimination of appellate jurisdiction does not apply to child support orders or awards of counsel fees. Mt. Hope, supra, 154 N.J. at 152, 712 A.2d 180; see also Allstate Ins. Co. v. Sabato, 380 N.J.Super. 463, 468-69, 882 A.2d 972 (App. Div.2005). The Supreme Court has also recognized that there may be other circumstances "where public policy would require appellate court review." Mt. Hope, supra, 154 N.J. at 152, 712 A.2d 180.
Recently, we observed that, in Mt. Hope, the Court also recognized the availability of appellate review when "necessary for it to carry out its `supervisory function over the courts.'" Morel v. State Farm Ins. Co., 396 N.J.Super. 472, 476, 935 A.2d 527 (App.Div.2007) (quoting Mt. Hope, supra, 154 N.J. at 152, 712 A.2d 180). In speaking for the court in Morel, Judge Coburn explained that this "supervisory function" permits our exercise of appellate jurisdiction when a trial court has exceeded its jurisdiction:
Plaintiff was entitled to a ruling applying the relevant statutory standards. Had the judge made such a ruling, the proper course would be dismissal of the appeal under N.J.S.A. 2A:23A-18. But the statutory denial of a right to appeal *869 to this court is based on the assumption that the trial judge will decide the case by applying the principles dictated by the Legislature. When a judge fails to carry out that legislative direction, as occurred here, our supervisory role requires consideration of the appeal and reversal and remand for application of the statutory standards. Otherwise, the statute would be rendered meaningless.
[396 N.J.Super. at 476, 935 A.2d 527.]
We adhere to this sensible view of the scope of N.J.S.A. 2A:23A-18(b), and likewise agree that we are not precluded by that statute from providing a remedy when a trial judge has failed to limit his or her review to the grounds set forth in N.J.S.A. 2A:23A-13. On the other hand, when the trial judge adheres to the statutory grounds in reversing, modifying or correcting an arbitration award, we have no jurisdiction to tamper with the judge's decision or do anything other than recognize that the judge has acted within his jurisdiction. Accordingly, we review the decision of the trial judge here for the limited purpose of determining whether he exceeded the authority granted to him by APDRA.
N.J.S.A. 2A:23A-13(c) defines the scope of the trial judge's jurisdiction in such matters. On the application of a party, a trial judge may modify or correct an award upon finding that the rights of that party were prejudiced by:
(1) Corruption, fraud or misconduct in procuring the award;
(2) Partiality of an umpire appointed as a neutral;
(3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;
(4) Failure to follow the procedures set forth in this act, unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or
(5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.
[Ibid.]
The first three subsections of N.J.S.A. 2A:23A-13(c) have no application here. There is not the slightest hint of corruption, fraud, or misconduct, N.J.S.A. 2A:23A-13(c)(1), or partiality, N.J.S.A. 2A:23A-13(c)(2), and DRP Carr's decision was "final and definite," N.J.S.A. 2A:23A-13(c)(3). Plaintiff argues, however, that the trial judge was authorized to modify or correct DRP Carr's determination in the Leocadia arbitration by way of both the fourth and fifth subsections. We agree that the type of prejudicial error encompassed by N.J.S.A. 2A:23A-13(c)(5) was committed in the Leocadia arbitration and, therefore, need not consider whether N.J.S.A. 2A:23A-13(c)(4) would also have application here.
It is readily apparent, in light of the related coverage issues in the Eriberto and Leocadia arbitrations, that it was a grave mistake to refuse consolidation, which became prejudicial when the arbitrators returned inconsistent decisions. We are satisfied that the trial judge was authorized to view the denial of consolidation and the rendering of inconsistent decisions as prejudicial. And, once the judge made that determination, he was required to remedy the error by way of his own determination of the matter "under the applicable facts determined by the umpire." N.J.S.A. 2A:23A-13(f). In complying with this latter standard, the judge adopted DRP Johnston's thorough and persuasive findings of fact regarding the misrepresentations of Eriberto and correctly concluded that the Court's holding in Palisades Safety *870 warranted a determination that Leocadia's claim as a noninnocent resident spouse should also be barred. And, lastly, the judge found that DPR Carr's overly technical and inequitable application of N.J.A.C. 11:3-25.4(f) also constituted prejudicial error and could not be permitted to stand in the way of plaintiff's proper declination of coverage based on Eriberto's misrepresentations and omissions.
Because the trial judge's thorough and insightful oral decision reveals that he steered a course well within the confines of N.J.S.A. 2A:23A-13(c)(5) in ruling in favor of plaintiff, we are barred from intervening by N.J.S.A. 2A:23A-18(a).
In addition, we decline to consider defendants' argument that N.J.S.A. 2A:23A-18(a) limits or deprives a party of the right to an appeal to the Appellate Division in a manner rendered unacceptable by N.J. Const. art. VI, § 5, ¶ 2. Because this argument was not raised by defendants until they submitted their reply brief in this court  and even then not precisely raised by its own separate point heading contrary to R. 2:6-2(a)(5)  it is not properly before us. See, e.g., In re Bell Atlantic-New Jersey, Inc., 342 N.J.Super. 439, 442-43, 776 A.2d 926 (App.Div.2001). We also observe that defendants failed to give notice to the Attorney General, as required by R. 2:5-1(h), of their belated argument that N.J.S.A. 2A:23A-18(b) is unconstitutional.
We lastly find insufficient merit in defendants' other arguments to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).[3]
The order denying defendants' motion to change venue is affirmed. Defendants' appeal of the order that reversed the arbitration award is dismissed pursuant to N.J.S.A. 2A:23A-18(b).
NOTES
[1] Defendant Open MRI of Clifton also has appealed the judge's dismissal of its unresolved demand for arbitration in the NAF. Because we find that we have no jurisdiction to tamper with the trial judge's determination to reverse the arbitration award entered in favor of Collins, we find no error in the dismissal of Open MRI of Clifton's pending arbitration demand.
[2] Collins also argues that another judge's denial of his motion to change venue was erroneous and should be reversed. Our review of that order is not subject to the statutory limitations on our appellate review that are more fully discussed in the remainder of this opinion and must be considered on its merits. Having carefully reviewed the arguments, we find this argument to have insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
[3] We briefly mention one of these other issues raised in this appeal. In light of his ruling in plaintiff's favor, the trial judge also dismissed with prejudice "any other claim by, or on assignment from Leocadia for benefits, indemnification or defense." This ruling expressly required a dismissal of defendant Open MRI of Clifton's demand for arbitration that had not been heard by NAF. We find Open MRI of Clifton's argument that it should be permitted a hearing in arbitration without merit since the trial judge's judgment with regard to Collins's award precludes any determination by the arbitrator other than a dismissal of Open MRI of Clifton's claim.