NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3004-17T1
                    A-4208-17T1

MONMOUTH MEDICAL
CENTER, a/s/o MICHAEL
ANNUCCI,

      Plaintiff-Respondent,

v.

STATE FARM INDEMNITY
COMPANY,

      Defendant-Appellant.

_____

SAINT BARNABAS MEDICAL
CENTER, a/s/o PAUL HAM,

      Plaintiff-Respondent,

v.

STATE FARM INDEMNITY
COMPANY,

      Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| --- |
| **August 12, 2019** |
| **APPELLATE DIVISION** |

Submitted December 17, 2018 – Decided August 12, 2019

Before Judges Messano, Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket Nos. L-2482-17 and L-0126-18.

Gregory P. Helfrich & Associates, attorneys for appellant (Alison Leonard Schlein, on the briefs).

Celentano Stadtmauer & Walentowicz LLP, attorneys for respondent Monmouth Medical Center (Steven Stadtmauer and Megan Elizabeth Verbos, on the brief).

Celentano Stadtmauer & Walentowicz LLP, attorneys for respondent Saint Barnabas Medical Center (Kristen Ottomanelli, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

In these back-to-back appeals, which we consolidate for the purpose of issuing a single opinion, defendant State Farm Indemnity Company (State Farm) seeks our review of two Law Division orders that vacated decisions rendered by a dispute resolution professional (DRP) pursuant to the Alternative Procedure for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -30. Because N.J.S.A. 2A:23A-18(b) bars any "further appeal or review" of such trial court orders, we dismiss the appeals.

In A-3004-17, the record reveals that Michael Annucci was injured in an automobile accident on June 21, 2013. As a result of the injuries sustained in the accident, on April 30, 2015, Annucci received out-patient hospital services,

including surgical and ancillary support services, from Monmouth Medical Center (Monmouth).  Following Annucci's discharge, Monmouth billed State Farm, Annucci's no-fault insurance carrier, for its services in the total amount of $21,403.80.  On the bill, Monmouth separately itemized its charges, line-by-line, in accordance with the Medicare Claims Processing Manual.[1]  Thus, Monmouth separately billed for the surgical services and the ancillary services, consisting of anesthesia, recovery room services, supplies, and drugs provided to Annucci.

State Farm approved payment in the amount of $5707.80, representing Monmouth's line item charges for the surgical services only.  In two separate Explanation of Benefits (EOB) statements, State Farm explained that it processed the bill in accordance with the New Jersey Hospital Outpatient Surgical Facility (HOSF) fee schedule, the Consumer Health Network (CHN) Preferred Provider Organization (PPO) contract, and the New Jersey medical fee schedule.  According to State Farm, the ancillary services that were separately itemized on Monmouth's bill were integral to the surgical

---

[1]  Specifically, Chapter 25, Section 75 of the Medicare Claims Processing Manual required "[t]he provider [to] enter[] the appropriate revenue code[] . . . to identify specific accommodation and/or ancillary charges" and "to explain each charge."

A-3004-17T1

procedure, were bundled into the HOSF fee schedule facility rate, and were not permitted to be reimbursed separately in an HOSF setting.

After Monmouth's internal appeal of the underpayment was rejected by State Farm, Monmouth demanded arbitration pursuant to the APDRA.[2] Following a hearing, on August 14, 2017, the assigned DRP issued an award denying Monmouth's claims. The DRP found that Monmouth was "not entitled to any further . . . medical expense benefits" and State Farm properly excluded the ancillary services billed separately by Monmouth. In the decision, relying on the regulations promulgated by the Department of Banking and Insurance (DOBI), the DRP initially acknowledged that it was "uncontroverted" that the unpaid ancillary services were, in fact, included in the list of covered services authorized in N.J.A.C. 11:3-29.5(a). Further, the DRP found "it noteworthy" that "the aggregate of the charges invoiced by [Monmouth did] not exceed the HOSF fee schedule rate assigned to the [applicable] primary procedure codes."

---

[2]  Pursuant to N.J.S.A. 39:6A-5.1(a), also known as the personal injury protection (PIP) statute, "disputes between an insurer and a claimant as to whether benefits are due under the PIP statute may be resolved, at the election of either party, by binding arbitration or by civil litigation." Kimba Med. Supply v. Allstate Ins. Co., 431 N.J. Super. 463, 482-83 (App. Div. 2013) (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 235 (App. Div. 2008)). The hospitals were the claimants' assignees.

However, according to the DRP, under N.J.A.C. 11:3-29.5(b),[3] the HOSF fee encompassed all the covered services, including the ancillary services, reimbursable for outpatient procedures "provided in [an] HOSF setting." Because N.J.A.C. 11:3-29.5(b) "precluded" reimbursement for separately billed "ancillary services provided in support of the primary surgical procedures[,]" it "operate[d] as a regulatory preclusion" to any other billing methodology. Acknowledging the "conflict . . . between the preclusionary provisions" of N.J.A.C. 11:3-29.5(b) and "the Medicare billing requirements cited by [Monmouth,]" the DRP explained that "DOBI [was] presumed to be aware of such Medicare billing requirements" and "could have permitted the invoicing of ancillary services in such instances." However, in the absence of "an appropriate exemption . . . inserted into N.J.A.C. 11:3-29.5(b) to permit

_____

[3] N.J.A.C. 11:3-29.5(b) provides:

> The [HOSF] fee is the maximum that can be reimbursed for outpatient procedures performed in a HOSF. The hospital outpatient facility fees in Appendix Exhibit 7 [of the Current Procedural Terminology (CPT) code] include services that would be covered if furnished in a hospital on an inpatient basis, including those set forth in (a)[(1) to (8) of N.J.A.C. 11:3-29.5].

N.J.A.C. 11:3-29.5(a)(1) to (8) include "[u]se of operating and recovery rooms," "[d]rugs," "supplies," "[a]nesthesia materials," and other ancillary services.

the billing practices employed by [Monmouth]," the DRP concluded that "State regulations [took] precedence over the Medicare regulations."

After Monmouth's application to the DRP for modification of the award was denied, Monmouth filed a verified complaint and order to show cause pursuant to N.J.S.A. 2A:23A-13(a) and Rule 4:67-1(a), seeking to vacate the award on the ground that the DRP violated N.J.S.A. 2A:23A-13(c)(3) and (c)(5). Specifically, in the complaint, Monmouth alleged the DRP "commit[ed] prejudicial errors when he imperfectly executed his power and erroneously applied law to the issues and facts presented." Monmouth sought a modified award, entering judgment against State Farm for $12,535.02, together with attorneys' fees and costs.

Following oral argument, on February 5, 2018, Judge David H. Ironson issued an order, vacating the arbitration award and entering a modified award in favor of Monmouth in the amount of $14,107.23. The judge then confirmed the modified award in accordance with N.J.S.A. 2A:23A-13(f). In his written statement of reasons, the judge explained that:

> [Monmouth] was denied reimbursement for services that are permitted pursuant to N.J.A.C. 11:3-29.5(b). The [c]ourt finds that denying reimbursement for these services constituted prejudicial error by the DRP, via his erroneously applying the law to issues and facts presented for alternative resolution. [Monmouth] should not be penalized for its required method of billing, particularly when it would have been fully

reimbursed for its costs had it "bundle billed." N.J.A.C. 11:3-29.5(b) does not explicitly require "bundle billing," and does not set forth how ancillary services must be billed. Accordingly, [Monmouth's] method of billing does not violate the [regulation]. Additionally, [Monmouth] is not seeking to be reimbursed for more than the maximum amount in the . . . HOSF [f]ee [s]chedule.

This appeal followed.

In A-4208-17, as a result of injuries sustained by Paul Ham in a January 18, 2015 automobile accident, on February 3, 2016, Ham received out-patient hospital services, including surgical and ancillary support services, from Saint Barnabas Medical Center (Saint Barnabas). Following Ham's discharge, Saint Barnabas billed State Farm, Ham's no-fault insurance carrier, for its services. In the bill, like Monmouth, Saint Barnabas itemized its charges for surgical and ancillary support services, line by line, for a total amount of $31,426.10. However, State Farm approved payments for only the surgical services, totaling $8623.57, and issued two EOBs, explaining, as it did for Monmouth's claims, that the fee schedule did not permit separate reimbursement for ancillary service fees.

After Saint Barnabas' internal appeal of the underpayment was denied by State Farm, Saint Barnabas demanded arbitration pursuant to the APDRA. Following a hearing, on November 8, 2017, the assigned DRP issued an award, denying Saint Barnabas' claims. In a written decision, the DRP rejected Saint

7

Barnabas' reliance on the Medicare Claims Processing Manual to justify its billing methodology, and determined that State Farm "correctly interpreted N.J.A.C. 11:3-29.5(a)," which "precluded . . . separate reimbursement" for ancillary services. After Saint Barnabas' application to the DRP for modification of the award was denied, like Monmouth, Saint Barnabas filed a verified complaint and order to show cause, seeking to vacate the award pursuant to N.J.S.A. 2A:23-13(c)(3) and (c)(5). Saint Barnabas sought a modified award, entering judgment against State Farm for $15,461.10, together with attorneys' fees and costs.

On March 2, 2018, following oral argument, Judge Louis S. Sceusi vacated the arbitration award. In an oral decision, the judge adopted Judge Ironson's reasoning, and concluded that Saint Barnabas' "billing format" of "itemiz[ing] ancillary services individually" was "not prohibited by statute or regulation." As a result, Judge Sceusi determined "[t]here was . . . no basis for the [DRP] to deny [Saint Barnabas'] application based upon the billing format alone[,]" particularly when the total amount billed by Saint Barnabas was "consistent with the maximums set forth in . . . the fee schedule." On March 6, 2018, Judge Sceusi entered a conforming order, modifying the award in favor of Saint Barnabas in the total amount of $18,663.60, and confirming the modified award in accordance with N.J.S.A. 2A:23A-13(f). Thereafter,

8

finding that State Farm "raised no new issues," Judge Sceusi denied State Farm's motion for reconsideration on April 16, 2018, and this appeal followed.

In both appeals, State Farm raises the following identical points for our consideration:

POINT I

THE TRIAL JUDGE INCORRECTLY VACATED THE ARBITRATION AWARD BY FAILING TO APPLY THE CORRECT STANDARD OF REVIEW.

POINT II

THE TRIAL JUDGE ERRED IN MISINTERPRETING THE LAW THAT WAS THE BASIS FOR THE DRP'S RULING.

In response, both Monmouth and Saint Barnabas assert that "appellate review is not warranted" because "[t]he trial court carried out its legislative duty in reversing the DRP when he committed prejudicial error by erroneously applying law to the issues and facts." "Moreover, State Farm has not alleged any of those 'rare circumstances' grounded in public policy that might compel this [c]ourt to grant limited appellate review." Accordingly, they urge us to dismiss the appeals for lack of jurisdiction.

Whether we have jurisdiction to hear these appeals turns on the meaning and scope of N.J.S.A. 2A:23A-18(b), which states:

Upon the granting of an order confirming, modifying[,] or correcting an award, a judgment or

decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree. There shall be no further appeal or review of the judgment or decree.

With increasing frequency, we have been asked to examine the extent to which we may intervene in these matters. In considering the scope of N.J.S.A. 2A:23A-18(b), our Supreme Court recognized in Mount Hope Development Associates v. Mount Hope Waterpower Project L.P., 154 N.J. 141, 152 (1998), that there are exceptions to N.J.S.A. 2A:23A-18(b). For example, the Court held that the APDRA's general elimination of appellate jurisdiction does not apply to child support orders. Ibid. The Court also recognized that there may be other circumstances "where public policy would require appellate court review" and observed that appellate review may occur when necessary for the court to carry out its "supervisory function over the courts[.]" Ibid.

In Morel v. State Farm Insurance Company, 396 N.J. Super. 472, 476 (App. Div. 2007), we explained that this "supervisory function" permits our exercise of jurisdiction when a trial court has exceeded its jurisdiction. "Otherwise, the statute would be rendered meaningless." Ibid. In adhering to Morel's approach as well as our deference to the Legislature's decree to eliminate review beyond that exercised in the trial court, we have exercised such review in only the most unusual circumstances. See, e.g., Open MRI & Imaging of Rochelle Park v. Mercury Ins. Grp., 421 N.J. Super. 160, 166 (App.

10

Div. 2011) (finding appellate review appropriate "when the relief sought in arbitration (reformation) is beyond the power of the DRP to award"); Liberty Mut. Ins. Co. v. Garden State Surgical Ctr., L.L.C., 413 N.J. Super. 513, 517 (App. Div. 2010) (finding the APDRA did not bar appellate review of "the judge's denial of leave to file an amended complaint or of the judge's dismissal of the action on timeliness grounds"); Morel, 396 N.J. Super. at 475 (invoking our supervisory function where the trial court failed to rule on all of the specific claims made by the plaintiff).

Indeed, in Fort Lee Surgery Center, Inc. v. Proformance Insurance Company, 412 N.J. Super. 99, 104 (App. Div. 2010), we held that appeals to this court must be dismissed even when we think the trial judge was mistaken in finding the DRP committed error. There, we examined whether the trial court exceeded its jurisdiction in its application of N.J.S.A. 2A:23A-13(c)(5), permitting trial court intervention upon a finding that the DRP committed prejudicial error in the application of the law to the facts, as occurred here. Id. at 104. We held:

> Certainly, not every instance in which a judge utters the phrase "prejudicial error" will preclude appellate review. The exercise of our supervisory function cannot be talismanically eliminated by the mere invocation of the words of the statute. But, when a trial judge is able to provide a rational explanation for how the arbitrator committed prejudicial error, N.J.S.A. 2A:23A-18(b) requires a dismissal of an

appeal of that determination regardless of whether we may think the trial judge exercised that jurisdiction imperfectly. Any broader view of appellate jurisdiction would conflict with the Legislature's expressed desire in enacting [the] APDRA to eliminate appellate review in these matters.

[Ibid.]

We have said that "when the trial judge adheres to the statutory grounds in reversing, modifying[,] or correcting an arbitration award, we have no jurisdiction to tamper with the judge's decision or do anything other than recognize that the judge has acted within his jurisdiction." N.J. Citizens Underwriting Reciprocal Exch. v. Kieran Collins, D.C., L.L.C., 399 N.J. Super. 40, 48 (App. Div. 2008). The provisions in N.J.S.A. 2A:23A-13 "define[] the scope of the trial judge's jurisdiction in such matters[,]" ibid., and provide:

In considering an application for vacation, modification[,] or correction, a decision of the umpire on the facts shall be final if there is substantial evidence to support that decision; provided, however, that when the application to the court is to vacate the award pursuant to paragraph (1), (2), (3), or (4) of subsection [(c)], the court shall make an independent determination of any facts relevant thereto de novo, upon such record as may exist or as it may determine in a summary expedited proceeding . . . .

[N.J.S.A. 2A:23A-13(b).]

12

A-3004-17T1

Pertinent here, N.J.S.A. 2A:23A-13(c)(3) provides that "[t]he award shall be vacated on the application of a party . . . if the court finds that the rights of that party were prejudiced by" the umpires "exceeding their power" in "making the award," or "so imperfectly executing that power that a final and definite award was not made[.]" Therefore, when the claim is made that the umpires "exceed[ed] their power or so imperfectly execut[ed] that power that a final and definite award was not made," the judge must de novo consider the factual record, and, if necessary, order a summary proceeding to supplement the record.

N.J.S.A. 2A:23A-13(f) further provides:

> Whenever it appears to the court to which application is made . . . either to vacate or modify the award because the umpire committed prejudicial error in applying applicable law to the issues and facts presented . . . [, N.J.S.A. 2A:23A-13(c)(5)], the court shall, after vacating or modifying the erroneous determination of the umpire, appropriately set forth the applicable law and arrive at an appropriate determination under the applicable facts determined by the umpire. The court shall then confirm the award as modified.

Thus, only if the judge concludes the umpire's application of the law to the facts was "prejudicial[ly] erro[neous]" may the judge "vacat[e] or modify[] the erroneous determination," and apply the "applicable law" to reach the proper result. Ibid.

Applying these principles, we are satisfied that the orders under review fall within the parameters of N.J.S.A. 2A:23A-18(b). We dismiss the appeals because both Judge Ironson and Judge Sceusi properly exercised the authority granted to them under the APDRA, adhered to the statutory grounds in vacating the DRPs' awards, and provided rational explanations of how the respective DRPs committed prejudicial error within the meaning of N.J.S.A. 2A:23A-13(c)(5). Thus, "[b]ecause the judge[s] navigated within [the] APDRA's parameters," Fort Lee Surgery Ctr., 412 N.J. Super. at 104, there is no principled reason for the exercise of our supervisory jurisdiction, or any unusual circumstances where public policy would require our intervention, and we reject State Farm's contrary contentions. See Riverside Chiropractic Grp., 404 N.J. Super. at 239-40 (noting that "the supervisory function of the Appellate Division, as applied in Morel, [wa]s unnecessary" because the "trial court in th[at] case did not commit any glaring errors that would frustrate the Legislature's purpose in enacting the APDRA").

Appeals dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-3004-17T1