**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0042-19

PETER MAX, VIAMAX, INC.,
and ALP, INC.,

      Plaintiffs-Appellants,

v.

GREAT AMERICAN SECURITY
INSURANCE CO. and
INTERESTED UNDERWRITERS
AT LLOYDS,

      Defendants-Respondents.

_____

Argued February 11, 2021 – Decided March 11, 2021

Before Judges Yannotti, Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7136-18.

Bradley J. Nash (Schlam Stone & Dolan LLP) of the New York bar, admitted pro hac vice, argued the cause for appellants (Howard Law LLP, attorneys; Jane A. Grinch, of counsel and on the briefs; Steven Siegel, on the briefs).

Philip C. Silverberg argued the cause for respondent Great American Security Insurance Co. (Mound Cotton Wollan & Greengrass LLP, attorneys; Philip C. Silverberg, of counsel and on the brief; Craig R. Rygiel, on the brief).

Adam P. Stark argued the cause for respondent Interested Underwriters at Lloyds (Fleischner Potash LLP, attorneys; Benjamin A. Fleischner and Kirsten J. Orr, on the brief).

PER CURIAM

In this insurance valuation dispute, plaintiffs Peter Max, Viamax, Inc., and Alp, Inc., appeal from an order confirming a $48,876,014 arbitration award in their favor and against their insurers Great American Security Company (Great American) and Interested Underwriters at Lloyds (Lloyds) under the Alternative Procedure for Dispute Resolution Act (Act), N.J.S.A. 2A:23A-1 to -30. Based on our review of the record, we are convinced we do not have jurisdiction to consider the issues raised on appeal, and accordingly dismiss the appeal in accordance with N.J.S.A. 2A:23A-18(b).

I.

The relevant facts are not disputed. Plaintiffs maintained a warehouse facility located in Lyndhurst, where approximately eighty percent of the artwork of Peter Max was stored. On October 29, 2012, a significant amount of that artwork was damaged or destroyed by flooding caused by Superstorm

2

Sandy. The damaged items consisted mostly of paintings, posters, and works on paper in various formats, which had been accumulated as unsold or extra works over many years.

At the time of the loss, Great American provided coverage to plaintiffs under a dealer's insurance policy. The Great American policy was a one-year policy that commenced on May 4, 2012, and had a coverage limit of $75 million. Additionally, Lloyds provided an excess insurance policy with a coverage limit of $325 million. The Lloyds policy was subject to all the terms, clauses, and conditions contained in the Great American policy.

On October 11, 2013, after nearly a year of investigating and evaluating the claim, the parties were unable to agree on the amount of the loss. Great American accordingly made a written demand pursuant to its policy for an appraisal to determine the value of the loss. Lloyds made a similar demand.

The parties subsequently retained appraisers and also agreed, consistent with the terms of the Great American policy, to designate a former New Jersey Supreme Court Associate Justice to serve as Umpire, who would resolve any "differences" between the respective appraisals. The parties further agreed that the Umpire's final appraisal and appointment would be governed by the

3

Act. As the parties' appraisers' valuations of the loss differed substantially, the matter was ultimately submitted to the Umpire for resolution.

After extensive proceedings, the Umpire issued a fifty-two-page written decision that valued the loss at $48,876,014, and which divided the loss into six categories: prints and posters, overpaints, paintings, acrylic, mixed media on paper, and other. The Umpire explained in great detail her extensive involvement in the appraisal process, the disputes between the parties' appraisers, the methodology employed by them, and how she resolved those disputes in determining the amount of loss.

The Umpire made specific factual findings and determined that the doctrine of contra proferentem[1] was inapplicable under the facts presented. The Umpire concluded that the Great American policy was not a contract of adhesion, but rather "a standard form dealer's policy that was altered by sophisticated parties, capably represented, who engaged in an arms-length

---

[1] The doctrine of contra proferentem provides that "[w]here a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party if the contract was the result of negotiations between parties of unequal bargaining power." Chubb Custom Ins. v. Prudential Ins., 195 N.J. 231, 238 (2008). It is a consumer-protective doctrine "only available in situations where the parties have unequal bargaining power." Pacifico v. Pacifico, 190 N.J. 258, 268 (2007). "If both parties are equally 'worldly-wise' and sophisticated, contra proferentem is inappropriate." Ibid.

transaction." She therefore concluded the policies did not "require application of presumptions in favor of [plaintiffs]."

The Umpire also determined that the insurance policies were not "valued policies,"[2] and concluded that certain spreadsheets which contained a list of values for the insured property that was attached to the Lloyd's policies, did not represent the parties' agreement to value plaintiff's artwork at a specific price. Rather, the loss would be evaluated consistent with the terms and conditions of the policies, and specifically General Endorsement No. 4 (Endorsement Four)[3] in the Great American policy, that left "unchanged the mechanism for addressing partial losses but [altered] the calculation of value in general." The Umpire also applied a "blockage discount" to three of the six

---

[2] A "valued" policy is one in which the "value of the property insured is definitely settled by the contract engagement of the parties so that in the event of a total loss proof of the actual value becomes unnecessary." Karcher v. Philadelphia Fire & Marine Ins., 32 N.J. Super. 496, 499 (App. Div. 1954), modified on other grounds, 19 N.J. 214 (1955). "[I]t is the uncertainty of the amount of the liability of the insurer which distinguishes a so-called open policy from a valued policy." Ibid.

[3] General Endorsement Four, which plaintiffs' insurance broker specifically bargained to be included in the Great American policy, provided for the valuation of insured property in the event of loss or damage. Specifically, the valuation of original works of art and original posters would be at the retail value while the valuation of other prints and posters would be at wholesale value.

A-0042-19

categories of artwork as follows: 1) overpaints—15%; 2) prints—15%; and 3) posters—25%.

On October 5, 2018, plaintiffs filed a verified complaint and order to show cause seeking to modify the award under N.J.S.A. 2A:23A-13(f) [4] claiming the Umpire made several factual and legal errors. Specifically, plaintiffs alleged the Umpire erred by: 1) finding that plaintiffs and its insurers had equal bargaining power and refusing to apply the doctrine of contra proferentem, 2) concluding that the policies were not valued policies, and 3) applying blockage discounts to three of the six categories of artwork.

On May 14, 2019, Judge John D. O'Dwyer heard oral argument on plaintiffs' motion to modify the award and denied plaintiffs' application in a May 21, 2019 written decision. Judge O'Dwyer first concluded that the Umpire properly refused to apply the doctrine of contra proferentem and her factual determination that the parties were of equal bargaining power was supported by "substantial evidence" in the record. Specifically, the judge relied on the Umpire's conclusions that plaintiff was a "a sophisticated business" who had generated six million dollars in revenue for 2012 and was

---

[4] N.J.S.A. 2A:23A-13(f) permits the Law Division to modify an award if the Umpire "committed prejudicial error in applying applicable law to the issues and facts presented for alternative resolution."

6                                                                    A-0042-19

"capably represented by its insurance broker and bargained for . . . Endorsement [Four]."

Judge O'Dwyer also concluded that the Umpire's finding that the policies "were not 'valued policies'" was supported by substantial credible evidence. Indeed, the judge found that there was nothing in the record that supported plaintiffs' proposition "that the attachment of the spreadsheets to the [Lloyds] [p]olicy results in a finding that the valuation on the spreadsheets controls for the [Great American] [p]olicy[.]" The judge further noted that if the policies were "valued policies" then "there would have been no necessity for the extensive, painstaking[,] and detailed appraisal evaluations undertaken by each side of the dispute."

The judge rejected plaintiff's argument that the Umpire erred in her interpretation and application of the policy term "retail value." Judge O'Dwyer found that the Umpire's "determination of retail value was derived from her in-depth study and consideration of the Max Organization and its sales history, volume, and practices." The judge agreed with the Umpire that the "undisputed facts demonstrate that in many categories of artwork . . ., the sales were largely bulk sales at prices far removed from gallery asking prices." Accordingly, Judge O'Dwyer determined that the Umpire's adopted

7

methodology for determining retail value was based on substantial credible evidence.

Finally, Judge O'Dwyer concluded that the "Umpire did not err in her determination to the use of blockage discount." The judge noted that the Umpire rejected a blockage discount for some categories of artwork including, "[o]ther" and "[w]orks on [p]aper," while applying it to "[p]osters." Judge O'Dwyer stated that the Umpire utilized the broad evidence approach[5] and applied the blockage discount because plaintiff's approach to valuation "overlooked the possibility that many of the items had not sold in the past and that the entire body of works likely would not in the future be sold at those prices." In addition, the judge found that like "the issue with regard to 'retail value[,]' blockage discount was appropriate in the particular factual scenario herein."

Plaintiffs filed a motion for reconsideration which the court denied. Judge O'Dwyer subsequently entered final judgment. On October 3, 2019, Great American and Lloyds filed a motion to dismiss plaintiffs' appeal pursuant to Rule 2:8-2, which we denied. This appeal followed.

---

[5] The broad evidence rule "requires the fact-finder to consider all evidence an expert would consider relevant to an evaluation, and particularly both fair market value and replacement cost less depreciation." Elberon Bathing Co., Inc. v. Ambassador Ins., 77 N.J. 1, 13 (1978).

On appeal, plaintiffs contend that we possess subject matter jurisdiction over all the issues presented in this appeal, and argue appellate review is necessary in accordance with our supervisory role over awards issued under the Act. Specifically, plaintiffs maintain the court: 1) applied the incorrect standard of review to the Umpire's determinations; 2) committed error because the application of blockage discounts, which they characterize as a "novel question of law in New Jersey," is contrary to General Endorsement Four's language that plaintiffs would receive retail value for the insured property; 3) incorrectly concluded the insurance policies were not "valued policies"; and 4) failed to apply the "reasonable expectations of the insured doctrine" when construing the policies, contrary to public policy. We conclude, however, that plaintiffs' appeal is barred by the Act.

## II.

The Act is a voluntary procedure for alternative dispute resolution. "Parties who enter into an agreement under the [Act] waive their right to a jury trial" and to an appeal of the arbitrator's decision except as provided in N.J.S.A. 2A:23A-13. Weinstock v. Weinstock, 377 N.J. Super. 182, 188 (App. Div. 2005) (citing N.J.S.A. 2A:23A-2(b)). Under the Act, an arbitration award may be challenged by commencing a "summary application in the Superior

9

Court for its vacation, modification or correction." N.J.S.A. 2A:23A-13(a).

Once the trial court grants an order that confirms, modifies, or corrects an

arbitration award, the court is to enter a judgment or decree in conformity with

the award. N.J.S.A. 2A:23A-18(b). The statute then explicitly provides:

"There shall be no further appeal or review of the judgment or decree." Ibid.

"Thus, the only appeal of an umpire's award contemplated by the [Act] 'is an

expedited summary review to the Chancery Division of the New Jersey

Superior Court.'" Weinstock, 377 N.J. Super. at 188 (quoting Mt. Hope Dev.

Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 148 (1998)).

The statutory prohibition against appeals from judgments confirming

arbitration awards is not without exception. Appellate review of a trial court

judgment confirming an arbitration award is permissible in those "rare

circumstances" where "public policy" requires such a result. Mt. Hope Dev.

Assocs., 154 N.J. at 152. For example, there is "a judicially-recognized

caveat," Kimba Med. Supply v. Allstate Ins., 431 N.J. Super. 463, 481 (App.

Div. 2013), to N.J.S.A. 2A:23A-18(b)'s proscription where appellate review is

required to fulfill our "supervisory function over the [trial] courts." Id. at 482

(quoting Mt. Hope Dev. Assocs., 154 N.J. at 152); see also N.J. Mfrs. Ins. v.

Specialty Surgical Ctr., 458 N.J. at Super. 63, 68 (2019); Riverside

Chiropractic Grp. v. Mercury Ins., 404 N.J. Super. 228, 239 (App. Div. 2008). "This residual appellate review function, [however,] . . . is to be exercised sparingly . . . ." Kimba Med. Supply, 431 N.J. Super. at 482.

In Morel v. State Farm Insurance Co., we determined a review of an order confirming an arbitration award was required to fulfill our supervisory function because the trial court did not apply the correct legal standard of review and did not rule on the plaintiff's claims. 396 N.J. Super. 472, 476 (App. Div. 2007). Similarly, in Kimba Medical Supply, we found our supervisory function supported appellate review of a judgment confirming an Act arbitration award because the case presented "unsettled questions of statutory interpretation" that required "definitive precedential guidance." 431 N.J. Super. at 482-83.

In contrast, we have dismissed appeals from trial court orders addressing arbitration awards entered under the Act. Most recently, in Monmouth Medical Center v. State Farm Indemnity Co., we explained we "have no jurisdiction to tamper with the judge's decision or do anything other than recognize that the judge has acted within his [or her] jurisdiction" where the judge adheres to the Act's statutory grounds in addressing a challenge to an arbitration award. 460 N.J. Super. 582, 590 (App. Div. 2019) (quoting N.J.

 A-0042-19

Citizens Underwriting Reciprocal Exch. v. Kieran Collins, D.C., L.L.C., 399 N.J. Super. 40, 48 (App. Div. 2008)).  We also dismissed appeals from trial court orders vacating arbitration awards, finding we lacked jurisdiction under N.J.S.A. 2A:23A-18(b) because the trial judges "exercised [their] authority" in accordance with the Act, "adhered to the statutory grounds in vacating the . . . awards," and "provided rational explanations" supporting their findings the dispute resolution professionals committed prejudicial error under N.J.S.A. 2A:23A-13(c)(5).  Id. at 591.

Applying these legal principles, we discern no basis to exercise our supervisory powers over the court, as Judge O'Dwyer did not depart from the Act in any manner.  Indeed, the record is bereft of any of the "rare circumstances" supporting an exception to N.J.S.A. 2A:23A-18(b)'s proscription of appellate review of an order confirming an Act arbitration award.  See Mt. Hope Dev. Assocs., 154 N.J. at 152.  Judge O'Dwyer carefully considered the record presented; analyzed plaintiffs' challenges under the correct statutory standard and applicable standards of review; and provided a reasoned and well-supported decision rejecting plaintiffs' application to vacate the awards.  See Monmouth Med. Ctr., 460 N.J. at 591.

A-0042-19

In addition, there are no public policy issues warranting an exercise of our appellate jurisdiction. The arguments plaintiffs made before the trial court in support of their challenge to the arbitration award, and that they repeat on appeal, are merely disagreements regarding the interpretation of the insurance contracts and the sufficiency of the factual findings made by the Umpire regarding the parties' sophistication and coverage expectations at the time the policies were issued. Plaintiffs' appeal is barred under N.J.S.A. 2A:23A-18(b).

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0042-19