961 A.2d 21 (2008)
404 N.J. Super. 228
RIVERSIDE CHIROPRACTIC GROUP, a/s/o Megan Machado, Plaintiff-Appellant,
v.
MERCURY INSURANCE COMPANY, Defendant-Respondent.
DOCKET NO. A-3034-07T2.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 2008.
Decided December 17, 2008.
*23 Joseph A. Massood, Wayne, argued the cause for appellant (Mr. Massood, attorney; Brian O'Reilly, on the brief).
Michael R. Speer, Roseland, argued the cause for respondent (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Anthony F. Andrisano, Jr., on the brief).
Before Judges STERN, LYONS and WAUGH.
The opinion of the court was delivered by
LYONS, J.A.D.
Plaintiff, Riverside Chiropractic Group, appeals from a judgment affirming an arbitration award entered pursuant to the Alternative Procedure for Dispute Resolution Act, N.J.S.A. 2A:23A-1 to -19 (APDRA), regarding personal injury protection (PIP) costs incurred by one of its patients. Because we find that the APDRA, N.J.S.A. 2A:23A-18(b), bars appeal to this court, we dismiss. The following factual and procedural history is relevant to our consideration of the issues advanced on appeal.
On March 1, 2006, plaintiff's patient, who was twenty-two years old at the time, was injured in an automobile accident. On March 5, 2006, the patient sought treatment from plaintiff for her resulting injuries. The patient, who was insured pursuant to her mother's policy, assigned plaintiff all of her rights under the insurance contract on that date. The patient thereafter began a course of treatment for her injuries that lasted several months.
On May 10, 2006, plaintiff sent a pre-certification request to defendant[1] for payment for the treatments it had provided to the patient. Plaintiff made its request pursuant to defendant's decision point review plan,[2] which defendant implemented in accordance with N.J.A.C. 11:3-4.7(c)(4) which requires decisions regarding payment pre-certification to be based upon medical necessity and treatment. The request contained the patient's medical evaluation and history, as well as information on her range of motion, a diagnostic assessment, and a plan of treatment.
Two days later, on May 12, 2006, defendant responded by letter and informed plaintiff that Dr. Louis Cuccaro, D.C. had *24 reviewed the request and approved certain medical services but denied others on behalf of defendant. Specifically, Dr. Cuccaro determined that plaintiff's "[s]ervices exceed the usual and customary care required for the diagnosis." The response letter also informed plaintiff that a more detailed explanation of the denial would be provided upon request and plaintiff could seek reconsideration of the determination. Defendant also included information regarding plaintiff's right to appeal to the National Arbitration Forum.
Plaintiff continued to treat the patient and made more pre-certification requests. Defendant denied each of these requests in the same manner and plaintiff sought reconsideration from defendant on these denials. Defendant upheld all of its decisions.
On October 10, 2006, plaintiff filed a demand for arbitration. At that time, plaintiff had not obtained a copy of the applicable insurance contract, and assumed that the contract mandated arbitration for PIP disputes. However, defendant provided a copy of the contract post-oral argument, supplementing the record on appeal. The policy states, in pertinent part, that "[a] PIP dispute, as defined in N.J.A.C. 11:3-5, may be submitted to dispute resolution by: a) an injured party, b) the Insured, c) a provider who is an assignee of PIP benefits of the company." (Emphasis added).
Plaintiff filed a PIP claim in the amount of $4,465.01 with the National Arbitration Forum, arguing that defendant's denial of the pre-certification requests violated N.J.A.C. 11:3-4.7(c)(4). The National Arbitration Forum assigned a Dispute Resolution Professional (DRP) to hear the matter.
In response to plaintiff's demand for arbitration, Dr. Cuccaro drafted a letter documenting his reasons for denying pre-certification in more detail. This letter was dated February 2, 2007.
The DRP heard oral arguments on July 24, 2007. At that time, plaintiff argued that Dr. Cuccaro's February 2, 2007, letter was in fact an impermissible retrospective denial of payment, prohibited by N.J.A.C. 11:3-4.7(g). The DRP rejected this argument.
The DRP issued a written opinion awarding defendant the cost of medical supplies used for treating the patient in the amount of $300. He also awarded $500 for attorney's fees and $225 in costs pursuant to N.J.S.A. 39:6A-5.2(g), but held that defendant's reasons for the pre-certification denials were "sufficient" and denied plaintiff the remaining $3,540.01 requested.
On November 26, 2007, plaintiff filed a verified complaint and an order to show cause seeking to vacate the DRP's decision in the Law Division, pursuant to N.J.S.A 2A:23A-13(a). The trial court affirmed the arbitration award and this appeal ensued.
Plaintiff presents the following arguments for our consideration:
POINT ONE:
The procedural bar of N.J.S.A. 2C:23A-18(b) [sic] is unconstitutional as applied to plaintiff because a knowing and voluntary waiver of the right to an appeal is not valid in a contract of adhesion. (Not Raised Below).
POINT TWO:

N.J.A.C. 11:3-4.7(c)(4) clearly requires that denials of precertification requests be based upon medical necessity and defendant's February 2, 2007 peer review was an impermissible and incorrect retrospective denial prohibited by N.J.A.C. 11:3-4.7(g) which requires that the award be vacated. (Raised Below).

*25 A. Defendant's retrospective denial is prohibited by the Code and contrary to public policy.
B. This court should exercise appellate jurisdiction to provide needed supervisory authority.
We first turn to plaintiff's claim that the APDRA, N.J.S.A. 2A:23A-18(b), is unconstitutional as applied.[3] We begin by noting that "the burden [is] upon a challenger of a statute on constitutional grounds [and] is indeed onerous." Williams v. State, 375 N.J.Super. 485, 506, 868 A.2d 1034 (App.Div.2005), aff'd, In re P.L. 2001, Chapter 362, 186 N.J. 368, 895 A.2d 1128 (2006). Moreover, our Supreme Court has stated "every possible presumption favors the validity of an act of the Legislature." State v. Trump Hotels and Casino Resorts, Inc., 160 N.J. 505, 526, 734 A.2d 1160 (1999) (quoting New Jersey Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8, 292 A.2d 545 (1972)). We, therefore, "exercise `extreme self restraint' before using `the judicial power to invalidate a legislative act[,]' and we will not declare a legislative act void `unless its repugnancy to the Constitution is clear beyond a reasonable doubt.'" LaManna v. Proformance Ins., 184 N.J. 214, 223, 876 A.2d 785 (2005) (quoting Trump Hotels & Casino, supra, 160 N.J. at 526, 734 A.2d 1160). Moreover, "a constitutional issue should not be decided `unless its resolution is imperative to the disposition of litigation.'" Gac v. Gac, 186 N.J. 535, 547, 897 A.2d 1018 (2006) (quoting Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80, 891 A.2d 1202 (2006)).
Disputes between an insurer and a claimant as to whether benefits are due under the PIP statute may be resolved, at the election of either party, by binding arbitration or by civil litigation. Cynthia Craig & Daniel Pomeroy, New Jersey Auto Insurance Law § 10:1 at 187 (2008); see also N.J.S.A. 39:6A-5i. We have held that both legal and factual disputes are capable of resolution through PIP arbitration and in 2002, we held that when Alternative Dispute Resolution is applied to PIP disputes, it must be conducted pursuant to the APDRA. Coalition for Quality Health Care v. N.J. Dept. of Banking & Ins., 348 N.J.Super. 272, 312, 791 A.2d 1085 (App.Div.), certif. denied, 174 N.J. 194, 803 A.2d 1165 (2002).
The APDRA sets forth in detail the manner in which parties may resolve disputes without resorting to traditional civil litigation. Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 145, 712 A.2d 180 (1998). In order to invoke the provisions of the statute, the parties must clearly specify its applicability in their arbitration agreement. N.J.S.A. 2A:23A-2; Mt. Hope Dev. Assocs., supra, 154 N.J. at 145, 712 A.2d 180.
The APDRA sets strict limits on the appeal of an arbitration award. Specifically, N.J.S.A. 2A:23A-18(b) states that "[u]pon the granting of an order confirming, modifying or correcting an [arbitration] award, a judgment or decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree. There shall be no further appeal or review of the judgment or decree."
Although parties generally have the right to appeal from a final order or judgment of the Law and Chancery Divisions of the Superior Court, the APDRA's proscription against appellate review has been held valid because "[t]he general rule . . . is that a party may, by express agreement *26 or stipulation before trial or judgment, waive his right to appeal. . . ." Mt. Hope Dev. Assocs., supra, 154 N.J. at 147, 712 A.2d 180 (quoting Harmina v. Shay, 101 N.J. Eq. 273, 274, 137 A. 558 (E. & A.1927)). Such agreements or stipulations "will be enforced by dismissal of the appeal taken out of violation thereof, or by refusing to pass upon questions covered by the waiver." Ibid.
In Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., supra, 154 N.J. 141, 712 A.2d 180, our Supreme Court specifically held that the APDRA does not infringe on the constitutional right to appeal. Id. at 152, 712 A.2d 180. See also New Jersey Citizens Underwriting Reciprocal Exchange v. Kieran Collins, D.C., LLC, 399 N.J.Super. 40, 47, 942 A.2d 864 (App.Div.), certif. denied, 196 N.J. 344, 953 A.2d 763 (2008) (holding that a party generally does not have the right to appeal a judge's order pursuant to the APDRA). The Court stated "the language of APDRA unmistakably informs parties that by utilizing its procedures they are waiving that right [to appeal]." Mt. Hope Dev. Assocs., supra, 154 N.J. at 148, 712 A.2d 180. The Court added that when parties waive their right to appeal, the intention and agreement to waive the right "must be clear, and there must be sufficient consideration." Id. at 147, 712 A.2d 180 (quoting Harmina, supra, 101 N.J.Eq. at 274, 137 A. 558).
Plaintiff acknowledges that the APDRA applies to PIP disputes, Coalition for Quality Health Care, supra, 348 N.J.Super. at 312, 791 A.2d 1085, and that the constitutional right to appeal may be waived. Mt. Hope Dev. Assocs., supra, 154 N.J. at 147, 712 A.2d 180. However, plaintiff emphasizes that it is equally well established that waiver is only permissible when "[t]he intention and agreement to waive the right of appeal . . . [is] clear, and there . . . [is] sufficient consideration." Ibid. (quoting Harmina, supra, 101 N.J.Eq. at 274). Plaintiff argues that because it is the assignee of a "one-sided adhesion contract, drafted by the insurer," there was no voluntary waiver of appellate review, and, therefore, the bar to appellate review is unconstitutional as applied.
However, when plaintiff filed its briefs and made this argument, it had not obtained a copy of the insurance contract, and therefore did not know its terms. Plaintiff incorrectly assumed that the contract required PIP disputes to be resolved by arbitration. After submission of the briefs, defendant supplied a copy of the insurance contract and supplemented the record on appeal. The contract clearly states that a PIP dispute "may be submitted to dispute resolution" by an assignee. (Emphasis added). The use of the term "may" clearly gives plaintiff the option of filing for arbitration, but does not require it to do so. In other words, had plaintiff opted to file its claim for PIP costs initially in the trial court, nothing in the contract language would have forbidden the suit from going forward.
The insurance contract goes on to state that:
PIP dispute resolution shall be conducted in accordance with the procedures set forth in N.J.A.C. 11:3-5, including any amendments. The final determination made by the dispute resolution professional shall be binding upon the parties, but subject to vacation, modification or correction by the Superior Court in an action filed pursuant to N.J.S.A. 2A:23A-13 for review of the award.
Plaintiff, as the assignee of this contract, is bound by these terms. See James Talcott, Inc. v. H. Corenzwit & Co., 76 N.J. 305, 309-10, 387 A.2d 350 (1978) (holding that an assignee's rights are limited to the rights of the assignor and are subject to *27 the equities and defenses that could have been asserted against the assignor before assignment). The APDRA, N.J.S.A. 2A:23A-18(b), clearly bars appellate review of an arbitrator's decision. These are the terms plaintiff is bound by as the assignee, and our Supreme Court has held that those terms are constitutional, so long as they are knowingly agreed to. Mt. Hope Dev. Assocs., supra, 154 N.J. at 149, 712 A.2d 180.
Plaintiff argues that because the insurance contract requires that "PIP dispute resolution shall be conducted in accordance with the procedures set forth in N.J.A.C. 11:3-5," arbitration was mandatory. We disagree. The contract states the injured party, the insured or the insured's assignee "may" submit to arbitration. If a party does bring the claim to arbitration, the contract requires that it "shall" be conducted in accordance with the APDRA. This language clearly does not mandate arbitration. It only requires APRDA procedures if the insured, the injured party or the insured's assignee chooses arbitration.
Also, the applicable insurance contract does not entitle the insurer to elect arbitration over the wishes of the insured. The standard personal automobile policy provided in Craig & Pomeroy's New Jersey Auto Insurance Law states that "[e]ither party may make a written demand for arbitration." Craig & Pomeroy, supra, Appendix C-1 at 733. The effect of that contract language could be construed as making arbitration mandatory, because if the insured elects to sue, the insurer can simply make a written demand for arbitration, which must then be honored. The applicable insurance contract presented in this case, however, gives the insurer no such option. Only the injured party, the insured, or an assignee of the insured may choose dispute resolution. There is nothing in the contract to suggest that if the insured opts to sue, the insurer can then demand arbitration. Therefore, arbitration was not mandatory for plaintiff in this case.
The fact that plaintiff did not read the contract before beginning the arbitration process is immaterial. As a general rule, "one who does not choose to read a contract before signing it cannot later relieve himself of its burdens." Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 386, 161 A.2d 69 (1960). The onus was on plaintiff to obtain a copy of the contract in a timely manner to ascertain what rights it waived by beginning the arbitration process. Plaintiff's failure to do this does not negate what would be an otherwise valid waiver of its right to review by the Appellate Division.
As plaintiff was not obligated to utilize APDRA arbitration, we, therefore, reject plaintiff's assertion that the APDRA is unconstitutional as applied.[4]
We next address plaintiff's argument that we should review the Law Division's order upholding the arbitration award as part of our "supervisory function." The Supreme Court has held that "in rare circumstances a court may vacate an arbitration award for public-policy reasons." Tretina v. Fitzpatrick & Assocs., 135 N.J. 349, 364, 640 A.2d 788 (1994). These circumstances arise in areas where the courts have "a nondelegable, special supervisory function." Mt. Hope Dev. Assocs., supra, 154 N.J. at 152, 712 A.2d 180. In Mt. Hope Dev. Assocs., the Court specifically *28 held that "[a]s with arbitration, when parties proceed under the APDRA, there may be other limited circumstances where public policy would require appellate court review." Ibid.
In Faherty v. Faherty, 97 N.J. 99, 477 A.2d 1257 (1984), the Court held that a child support award was subject to review beyond the statutory grounds for vacation or modification in N.J.S.A. 2A:24-8 because the courts have a "nondelegable, special supervisory function in the area of child support. . . ." Id. at 109, 477 A.2d 1257. Likewise, in Sabato, we held that we could review an arbitrator's award regarding attorney's fees because attorney's fees are governed by the Rules of Professional Conduct and therefore "come within the exclusive supervisory powers of the Court." Supra, 380 N.J.Super. at 473, 882 A.2d 972. However, in that same case, we declined to consider the Law Division's finding of bad faith on the part of the arbitrator because that issue did not embrace a "nondelegable special supervisory function exercisable by the court on review." Id. at 472, 882 A.2d 972 (internal citations omitted).
Most recently, in Morel v. State Farm Ins. Co., we applied the "supervisory function" exception to hear an appeal from a judge's order pursuant to the APDRA. 396 N.J.Super. 472, 935 A.2d 527 (App.Div. 2007). In that case, the Law Division applied the wrong standard of review when affirming the arbitrator's award and "did not rule at all on plaintiff's specific claims." Id. at 475, 935 A.2d 527. We held that, in such a case where the plaintiff was denied a ruling based on the relevant standard, an appeal was appropriate to safeguard the intention of the Legislature in drafting the statute. Id. at 476, 935 A.2d 527.
In this case, plaintiff contends that our supervisory function applies because "in affirming the arbitrator's award to defendant, the Law Division applied a standard of review outside the scope of it's [sic] authority to review arbitrations." However, unlike in Morel, the trial court in this case did not commit any glaring errors that would frustrate the Legislature's purpose in enacting the APDRA. The trial court correctly applied the relevant provisions of the statute to the facts at issue and clearly supported its finding that the DRP's award should not be reversed. The record indicates that this is clearly not an incident where the trial court failed to "decide the case by applying the principles dictated by the Legislature." Morel, supra, 396 N.J.Super. at 476, 935 A.2d 527. Because the purpose of the Legislature was not frustrated by the trial court's application of the APRDA, the supervisory function of the Appellate Division, as applied in Morel, is unnecessary.
Moreover, plaintiff's claims do not rise to the level of public policy that warrants appellate review. Seeking compensation for performing chiropractic treatments is not comparable to issues affecting the best interests of children, Faherty, supra, 97 N.J. at 109, 477 A.2d 1257, or to the Court's traditional role in monitoring counsel fees under the Rules of Professional Conduct. Sabato, supra, 380 N.J.Super. at 473, 882 A.2d 972.
Plaintiff's assertion that its claims were retrospectively denied is likewise not a matter of public policy and therefore need not be reviewed. It is directed exclusively to the PIP review process.
Because the constitutional right to appeal is waived and is statutorily barred and because plaintiff's claims do not require an exercise of our special supervisory function, we dismiss.
Dismissed.
NOTES
[1] Specifically, plaintiff sent the request to CHN Solutions, defendant's "vendor."
[2] N.J.A.C. 11:3-4.2 defines a "decision point" as "those junctures in the treatment of identified injuries . . . where a decision must be made about the continuation or choice of further treatment." The decision to administer the tests listed in N.J.A.C. 11:3-4.5(b) is also a "decision point." "Decision point review" means "the procedures in an insurer's approved decision point review plan for the insurer to receive notice and respond to requests for proposed treatment or testing at decision points." Ibid.
[3] Plaintiff served the notice of appeal on the Attorney General, pursuant to Rule 2:5-1(h). We would not have addressed plaintiff's claim otherwise.
[4] We do not and cannot pass on the question of the constitutionality of a APDRA required arbitration in an auto policy, particularly absent a complete factual record concerning the facts and circumstances surrounding the issuance of the policy and the insured's understanding. Honeyman v. Hanan, 300 U.S. 14, 25-26, 57 S.Ct. 350, 81 L.Ed. 476 (1937); Shelton College v. State Bd. of Education, 48 N.J. 501, 521, 226 A.2d 612 (1967).