**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2613-20

DELAWARE RIVER
PARTNERS, LLC,

      Plaintiff-Respondent,

v.

RAILROAD CONSTRUCTION
COMPANY, INC.,

      Defendant-Appellant,

and

RIGGS DISTLER AND
COMPANY, INC. and
HUNTER SITE SERVICES, LLC,

      Defendants-Respondents.

_____

          Argued May 2, 2022 – Decided June 24, 2022

          Before Judges Messano, Enright and Marczyk.

          On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0026-21.

          Michael F. McKenna argued the cause for appellant Railroad Construction Company, Inc. (Cohen Seglias

Pallas Greenhall & Furman, PC, attorneys; Michael F. McKenna and Timothy Ryan, on the briefs).

James H. Landgraf argued the cause for respondent Railroad Construction Company, Inc. (Dilworth Paxson, LLP, attorneys; James H. Landgraf and Benjamin W. Spang, on the brief).

PER CURIAM

In 2019, plaintiff Delaware River Partners, LLC, accepted a proposal from defendant Railroad Construction Company, Inc., to design, procure and construct a liquified petroleum gas unloading and loading facility in Gibbstown known as the Repauno Port & Rail Terminal Project (the Project). Plaintiff and defendant entered into a $75 million contract (the Contract).

Disputes arose over defendant's timely performance, and informal dispute resolution procedures outlined in the Contract failed to resolve the issues. In January 2021, plaintiff filed a complaint against defendant in the Law Division; plaintiff also named Riggs Distler and Company, Inc. (Riggs), a subcontractor defendant hired to work on the Project, as a defendant. Riggs had filed a construction lien claim against the property as the result of a dispute with defendant over payment. Plaintiff's complaint alleged defendant breached the Contract, and it also sought to discharge Riggs' construction lien.

On February 19, 2021, defendant sent formal written notice to plaintiff invoking Section 12.1.3 of the Contract and demanding the complaint be dismissed and the dispute submitted to binding arbitration. Later that same day, defendant filed a formal motion to dismiss the complaint in the Law Division "pursuant to the arbitration clause within" the Contract.

Plaintiff opposed the motion and cross-moved to amend its complaint to add Hunter Site Services, LLC (Hunter), another subcontractor of defendant that also filed a construction lien claim, as a defendant. Riggs joined in defendant's motion arguing the arbitration provision applied to plaintiff's claim against Riggs; alternatively, Riggs asserted that plaintiff's claim seeking to discharge Riggs' construction lien should be stayed pending arbitration between plaintiff and defendant.

After considering oral argument, the judge denied defendant's motion to dismiss and granted plaintiff's motion to amend the complaint. The judge reasoned Section 12.1.3's language was ambiguous, was permissive regarding arbitration and did not compel plaintiff to arbitrate its claims against defendant. He entered an order on March 22, 2021, denying the motion to dismiss.

Plaintiff soon filed its amended complaint, and defendant moved for reconsideration, with Riggs joining. Plaintiff filed opposition, and, in his oral

3

opinion of April 30, 2021, the judge denied the motion. He entered a conforming order, and this appeal followed.

Before us, defendant reprises the essential argument it made in the Law Division. It contends the only reasonable construction of the Contract's unambiguous dispute resolution provisions allowed either party to submit disputes to binding arbitration and compel the other party's participation. Plaintiff reiterates its argument that Section 12.1.3 is permissive, and neither party can compel arbitration without the other's consent. Riggs has not participated in the appeal.

We agree with defendant. When viewed in their entirety, the only reasonable interpretation of the Contract's dispute resolution provisions permitted either party to compel arbitration of disputes that arose under the Contract. We reverse and remand the matter to the Law Division for entry of an appropriate order consistent with this opinion.

I.

Because we construe "arbitration agreements under general contract principles," Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002), we start with the language of the Contract in this case. Article 12, entitled "Dispute Resolution," provides the following:

12.1 In General.  The [p]arties shall attempt to settle every dispute arising out of or in connection with this [a]greement ("Dispute"), by following the dispute resolution process set forth below in this Article 12, to the extent permitted by [l]aw.

12.1.1 **Mutual Discussions**.  If any dispute or difference of any kind whatsoever (a "Dispute") arises between the [p]arties in connection with, or arising out of, this [a]greement, the [p]arties within ten (10) days shall attempt to settle such Dispute in the first instance by mutual discussions between [o]wner and [c]ontractor.

12.1.2 **Further Procedures**.  If the Dispute cannot be settled within ten (10) days by mutual discussions, then the Dispute shall be finally settled under the provisions of this Section 12.1.2 or Section 12.1.3.  If the [p]arties fail to resolve any dispute through discussions pursuant to Section 12.1.1, either [p]arty shall have the right to provide written notice of the Dispute to the president or chief executive officer ("Senior Management") of the other [p]arty.  Upon a timely referral, the Senior Management of the [p]arties shall consider the Dispute, review such relevant information as they may determine and issue their decision (which decision shall be confirmed in writing) within five (5) [b]usiness [d]ays after receiving the referral.  If the Senior Management of the [p]arties cannot resolve the issue within the [five b]usiness[-d]ay period, then the [p]arties shall have the rights set forth below in Section 12.1.3.

12.1.3 **Arbitration.**  Subject as hereinafter provided, any Dispute arising out of[,] or in connection with, this [a]greement and not settled by Section 12.1.1 or Section 12.1.2 of this [a]greement may (regardless of the nature of the Dispute) be submitted by either

5

[p]arty to arbitration and finally settled in accordance with Commercial Arbitration Rules of the American Arbitration Association. The arbitration will be held in Gloucester County, New Jersey. There shall be a single arbitrator experienced in construction law. The arbitrator shall apply New Jersey law to resolve legal matters in dispute. The decision of the arbitrator shall be final and conclusive upon the parties hereto and shall be enforceable in a court of competent jurisdiction. Each party to the arbitration shall pay the compensation, costs, fees and expenses of its own witnesses, exhibits and counsel. The compensation, costs and expenses of the arbitrator, if any, shall be borne equally by the parties hereto. . . .

12.2 Continued Performance. During the conduct of dispute resolution procedures pursuant to this Article 12, (a) the [p]arties shall continue to perform their respective obligations under this Agreement, and (b) no [p]arty shall exercise any other remedies hereunder arising by virtue of the matters in dispute.[1]

[(Emphasis added).]

Although the appellate record is unclear, after oral argument before us, it is undisputed that the parties participated in the procedures set out in Sections

---

[1] The only other remedies expressly provided for in the Contract were in Sections 13, which defined events of default by defendant, as contractor, and plaintiff, as owner, and set forth available remedies in the event of default. In Section 13.2.4, the Contract provided: "Notwithstanding the availability and/or exercise of the foregoing remedies, [o]wner shall have all such other remedies available under applicable [l]aw." Section 13.4 permitted defendant to exercise certain remedies in the event of plaintiff's default, and to "pursue all such remedies as may be allowed under this [a]greement, at law or in equity."

12.1.1 and 12.1.2 without success. Therefore, the only issue remaining is whether having failed to resolve their dispute after exhausting those processes, did defendant, indeed, did either party, have the right to compel arbitration under Section 12.1.3?

## II.

We begin answering that question by acknowledging our reliance "on the well-recognized national policy and the established State interest in favoring arbitration." Arafa v. Health Express Corp., 243 N.J. 147, 170 (2020) (quoting Martindale, 173 N.J. at 85). "Consequently, an 'agreement to arbitrate should be read liberally in favor of arbitration.'" Medford Twp. Sch. Dist. v. Schneider Elec. Bldgs. Ams., Inc., 459 N.J. Super. 1, 7 (App. Div. 2019) (quoting Angrisani v. Fin. Tech. Ventures, LP, 402 N.J. Super. 138, 148 (App. Div. 2008)).

Nonetheless, "basic contract formation and interpretation principles still govern," our review, "for there must be a validly formed agreement to enforce." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 307 (2019)(citations omitted). Because the enforceability of a contractual arbitration provision is a legal determination, we need not defer to the trial court's interpretative analysis, "unless we find it persuasive." Id. at 316 (citing

Morgan v. Sanford Brown Inst., 225 N.J. 289, 302–03 (2016)).  We review the trial court's decision to compel or deny arbitration de novo.  Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020).

"A court's objective in construing a contract is to determine the intent of the parties."  Kernahan, 236 N.J. at 320 (citing Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).  "A basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning."  Id. at 321 (citing Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017)).  In addition, "[c]ontracts should be read 'as a whole in a fair and common sense manner.'"  Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)); see also Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000) (noting the contract "must be read as a whole, without artificial emphasis on one section, with a consequent disregard for others.  Literalism must give way to context."  (citing Schenck v. HJI Assocs., 295 N.J. Super. 445, 452–53 (App. Div. 1996))).

Here, plaintiff urged the motion judge, and now urges us, to focus on Section 12.1.3's use of the word "may," contending it rendered the final step of a detailed, comprehensive dispute resolution scheme permissive.  Plaintiff

8

contrasts the use of the word "shall" in Sections 12.1.1 and 12.1.2 and asserts one party's demand for arbitration under Section 12.1.3 need not compel the other's participation. Under plaintiff's construction, even though Section 12.1.3's express language provided "either" party could submit the dispute to arbitration, plaintiff cannot be compelled to arbitrate because both parties must agree to arbitrate any dispute.

In Riverside Chiropractic Group v. Mercury Insurance Co., we considered an arbitration provision in an insurance contract that said a personal injury protection dispute "may be submitted to dispute resolution by" the injured party, the insured or the insured's provider. 404 N.J. Super. 228, 233 (App. Div. 2008). Based on the policy's plain language, we concluded the word "may" did "not mandate arbitration." Id. at 237. We distinguished the policy at issue from the language used in the "standard personal automobile policy," which stated "[e]ither party may make a written demand for arbitration." Id. at 238 (alteration in original). Although it was dicta, we noted, "The effect of that contract language could be construed as making arbitration mandatory, because if the insured elects to sue, the insurer can simply make a written demand for arbitration, which must then be honored." Ibid.

A-2613-20

In Medford Township, we were required to construe an arbitration provision contained in the last of three contracts executed by the parties, the first two of which contained no alternative dispute resolution procedure and included specific provisions anticipating resolution of disputes in court by including provisions regarding the governing law and venue. 459 N.J. Super. at 3–5. The third contract included an arbitration provision that said any contractual dispute "may be settled by binding arbitration." Id. at 4–5.

We distinguished the facts presented in Medford Township by expounding on our dicta in Riverside and noting the insurance contract there "did not provide '[e]ither party may make a written demand for arbitration.'" Id. at 9 (alteration in original) (quoting Riverside, 404 N.J. at 238). We recognized that "when an arbitration provision specifically permits either party to select arbitration, once invoked, the other party may be bound to arbitrate the dispute." Ibid. (emphasis added) (citing Local 771, I.A.T.S.E. v. RKO Gen., Inc., 546 F.2d 1107, 1115–16 (2d Cir. 1977)).

We concluded that when reading the arbitration clause in pari materia with the provisions of the other two agreements, the arbitration clause "d[id] not evince a clear intent to waive the right to sue in court." Id. at 10. Nonetheless, we said that if the arbitration provision stood alone, its plain terms "might

10

support [the] argument that it is mandatory because the term, 'may' permitted either of the two 'sophisticated' parties to invoke arbitration." Ibid.

In this case, there is no dispute that plaintiff and defendant are sophisticated parties who executed a $75 million dollar contract while represented by counsel; indeed, the parties do not dispute that the Contract was revised, and edits were made to prior drafts to address concerns raised by counsel. Nor do the parties dispute that Article 12 of the Contract anticipated a three-step alternative dispute resolution procedure applicable to every "dispute," defined as "any dispute or difference of any kind whatsoever . . . aris[ing] between the [p]arties in connection with, or arising out of" the Contract. Plaintiff's breach of contract claim is a dispute within the express language of Article 12.

The first step under Article 12 required "Mutual Discussions," but Section 12.1.2 provided that if the dispute was not "settled within ten . . . days by mutual discussions," it "shall be finally settled under the provisions of . . . Section 12.1.2 or Section 12.1.3." (emphasis added). By its express language, the Contract required every dispute to be "finally settled" using the procedures outlined in Article 12.

11

The second step under Article 12 required the "Senior Management of the Parties" to consider the dispute if "either [p]arty . . . provide[d] written notice" and a "timely referral." Critically, if the dispute was not resolved by senior managers, Section 12.1.2 provided that "the [p]arties shall have the rights set forth . . . in Section 12.1.3." (emphasis added).

What were those "rights"? According to plaintiff, Section 12.1.3 only gave either party the ability to submit the dispute to binding arbitration if the other agreed, something both parties could have agreed to do in the absence of Section 12.1.3. Parties to a dispute are always free to submit a disagreement to arbitration, even without an express dispute resolution provision. Plaintiff's interpretation of the Contract accords defendant no "rights" under Section 12.1.3. The only logical construction of the provisions when read in their entirety is that either party had the "right" to submit the dispute to arbitration and compel the other party's participation.

Indeed, that conclusion is bolstered by the detailed arbitration procedure outlined in Section 12.1.3, setting forth a proceeding before an arbitrator "experienced in construction law," in a designated arbitral forum, with costs equally borne by the parties. The arbitrator's decision was to be "final and conclusive" as to the dispute. (emphasis added). Those provisions, presumably

12

negotiated by the parties, were hardly necessary if either party were free to refuse to arbitrate whenever the other party elected to do so. Rather, the only reasonable interpretation of those detailed provisions is that the parties decided to set the parameters for the arbitration in advance of either party invoking Section 12.1.3's provisions.

We conclude the only reasonable construction of the Contract is that urged by defendant. We therefore reverse the order denying defendant's motion to dismiss. We remand the matter to the trial court to enter an order staying plaintiff's complaint against defendant and ordering the parties to arbitration in accordance with Section 12.1.3 of the Contract.

We decline to address issues raised by plaintiff regarding the counts in its amended complaint seeking to discharge the lien claims of Riggs and Hunter. As noted, Riggs did not participate in this appeal, nor did Hunter, which was only added as a party to the litigation in the Law Division concurrently with the judge's decision. Given the judge's disposition of defendant's motion, he did not need to consider Riggs' contention, and one asserted by defendant in its reply brief, that contractual provisions in the subcontract between Riggs and defendant require the lien claim be "subsumed" within the arbitration.

Nor did the judge need to consider an argument Riggs presented when it joined defendant's motion to dismiss. Riggs cited N.J.S.A. 2A:44A-24.1(c), which provides:

> The court shall stay the suit to the extent that the lien claimant's contract or the contract of another party against whose account the lien claim is asserted provides that any disputes pertaining to the validity or amount of a lien claim are subject to arbitration or other dispute resolution mechanism.

Our caselaw also supports staying proceedings in the trial court in situations where some parties in the litigation are not parties to the arbitration agreement being enforced. See, e.g., Elizabethtown Water Co. v. Watchung Square Assocs., LLC, 376 N.J. Super. 571, 578 (App. Div. 2005) ("Where significant overlap exists between parties and issues, courts generally stay the entire action pending arbitration." (quoting Crawford v. W. Jersey Health Sys., 847 F. Supp. 1232, 1243 (D.N.J. 1994))).

In short, the parties are free to present arguments to the Law Division judge whether plaintiff's claims against Riggs and Hunter should proceed, be stayed pending arbitration between plaintiff and defendant, or be "subsumed" within the arbitration proceeding, even though neither Riggs nor Hunter were parties to the Contract.

14

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2613-20