**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2824-24

PANAT TARANAT,

    Plaintiff-Appellant,

v.

ROKT US CORP., SYED
MASTHAN, and ASHLEE
CAMPBELL,

    Defendants-Respondents.

_____

Argued December 4, 2025 – Decided January 8, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4635-24.

Christopher P. Lenzo argued the cause for appellant (Lenzo & Reis, LLC, attorneys; Christopher P. Lenzo, of counsel and on the briefs).

Colleen P. Tandy argued the cause for respondents (Fisher & Phillips LLP, attorneys; Colleen P. Tandy, of counsel and on the brief; David J. Treibman, on the brief).

PER CURIAM

Plaintiff Panat Taranat appeals from the trial court's March 28, 2025 order granting defendants Rokt US Corp. (Rokt), Syed Masthan, and Ashlee Campbell's motion to compel arbitration and dismissing his complaint without prejudice.

The primary issues on appeal are whether:  (1) the original arbitration agreement put plaintiff on notice he was waiving his rights to a jury trial; (2) Rokt's offer of a second arbitration agreement "extinguished" the original arbitration agreement; (3) the original arbitration agreement is unenforceable given neither Rokt nor Justworks,[1] Rokt's third-party human resources service, signed it; and (4) the original arbitration agreement was predicated on a continuing relationship between Rokt and Justworks.  We conclude the original arbitration agreement was valid and enforceable and therefore affirm the trial court's order insofar as it compelled arbitration.  However, the court should have stayed the case instead of dismissing it without prejudice.  Accordingly, we remand for the court to vacate the dismissal and stay this matter pending the outcome of the arbitration.

---

[1]  Rokt contracted with Justworks to assist it "with human resources related matters, such as payroll, workers' compensation insurance, and employee benefits."

A-2824-24

I.

In January 2022, plaintiff began working for Rokt as a software engineer. As a condition of his hiring, he signed an employment contract containing modification and integration clauses. The modification clause provided: "This letter agreement may be modified only if both [Rokt] and [plaintiff] consent in writing." The integration clause stated, "this letter and its attachments contain the entire agreement relating to your employment with . . . [Rokt]" and noted its "terms and conditions . . . may only be amended by agreement in writing."

Thereafter, on his first day of work, plaintiff electronically signed Rokt's "Worksite Employee Acknowledgement" (WEA) agreement with Justworks. The WEA agreement explicitly identified "ROKT CORP" as plaintiff's "Worksite Employer." The WEA agreement, in pertinent part, stated:

> 10. <u>Arbitration</u>. By clicking "I Accept" below, you, on the one hand, and [Rokt] and Justworks, on the other hand, <u>agree to use binding arbitration as the sole and exclusive means to resolve all disputes that may arise between you and [Rokt]</u> and/or you and Justworks, including, but not limited to, disputes regarding termination of employment and compensation. <u>You specifically waive and relinquish your right to bring a claim against [Rokt] and/or Justworks, in a court of law</u>, and this waiver shall be equally binding on any person who represents or seeks to represent you in a lawsuit against [Rokt] or Justworks in a court of law. <u>Similarly, [Rokt] and Justworks specifically waive and relinquish their respective rights to bring a claim against you in a</u>

A-2824-24

court of law, and this waiver shall be equally binding on any person who represents or seeks to represent [Rokt] or Justworks in a lawsuit against you in a court of law. You, [Rokt], and Justworks agree that any claim, dispute, and/or controversy that you may have against [Rokt] (or its owners, directors, officers, managers, employees, or agents), or Justworks (or its owners, directors, officers, managers, employees, or agents), or that [Rokt] or Justworks may have against you, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act . . . . Included within the scope of this arbitration agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims brought under the Fair Labor Standards Act or any other similar state or local law or regulation, or claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act or any other similar local, state, or federal law or regulation), equitable law, or otherwise. . . . By this arbitration agreement, you give up your right to trial by jury of any claim you may have against [Rokt] or Justworks, and [Rokt] and Justworks give up their right to trial by jury of any claim they may have against you.

[(All but first emphases added) (boldface omitted).]

Additionally, under "General Terms," the WEA agreement provided it was "the entire agreement between [plaintiff] and Justworks" and noted its terms "may only be changed in writing, signed by an authorized representative of Justworks."

4

Rokt required its software engineers to spend one week on-call every other month, during which they would be available twenty-four hours a day, seven days a week, and would have to respond to communications within one minute during that time. During months they are not on-call, Rokt's software engineers spend one week as the back-up for the on-call engineer. Back-up engineers are expected to respond to communications within three minutes if the on-call engineer has not responded.

Over the course of the next year-and-a-half, plaintiff alleges he experienced significant work-related stress that manifested in physical symptoms, including seizures. In response, he requested various accommodations from his employer, such as reduced on-call duties, the ability to work remotely during certain periods, and a transfer to a team with lighter on-call responsibilities. Most of these requests were allegedly denied or only partially granted.

On or about May 7, 2024, plaintiff notified Campbell that Masthan had directed him to not contact the human resources department "about reasonable accommodations because his reputation in the company would suffer if he continued to communicate with" it. Campbell replied the next day, informing plaintiff that Masthan had denied making such a statement to him. Later that

A-2824-24

week, an in-house attorney for Rokt requested plaintiff sign another arbitration agreement, titled "Mutual Agreement to Arbitrate Employment-Related Disputes," which specifically referenced disability discrimination claims. A representative for Rokt had already signed the agreement upon its being presented to plaintiff.

On May 9, plaintiff informed Rokt's attorney he wanted to have his own counsel review the new arbitration agreement but was unable to meet with his attorney until May 14. The following day, May 10, Masthan sent plaintiff a calendar invitation for a virtual meeting, which included an attached document summarizing prior communications regarding plaintiff's medical issues. During that meeting, Masthan and Campbell were both present and terminated plaintiff's employment, purportedly due to his inadequate job performance. Plaintiff asserts he had not received any prior notice of performance concerns and had previously earned consistent positive written performance evaluations. Given plaintiff was fired prior to his attorney being able to review the new arbitration agreement, he never signed it.

On December 11, 2024, plaintiff filed a complaint and jury demand against defendants, asserting discrimination claims under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, and the New York City

Human Rights Law (HRL), N.Y.C. Admin. Code § 8-101. Defendants subsequently moved to compel arbitration and stay the proceeding pending arbitration.

On March 28, 2025, the trial court granted defendants' motion to compel arbitration and dismissed the action without prejudice; it did not hold oral argument.[2] In a statement of reasons appended to the order, the court stated:

> Courts in New Jersey recognize and enforce arbitration agreements in light of the "public policy that encourages the 'use of arbitration proceedings as an alternative forum.[']" Wein v. Morris, 194 N.J. 364, 375-76 (2008). The New Jersey Uniform Arbitration Act expressly "authorizes courts to recognize and enforce arbitration agreements." Id. at 375. N.J.S.A. 2A:23B-7 permits applications to compel arbitration and to stay a pending action involving arbitrable claims. The [c]ourt is not persuaded here that introduction of an additional arbitration agreement, nor the fact that [d]efendant[s] w[ere] not . . . signator[ies] to the contract, . . . invalidate[s] the enforceable arbitration agreement that was signed by . . . [p]laintiff. Additionally, the [c]ourt finds that the language included in the arbitration agreement that was signed by [p]laintiff was sufficient to properly inform [p]laintiff of the rights that he was waiving in signing the agreement.

---

[2] Although oral argument was requested, plaintiff does not argue the matter should be remanded to the trial court for oral argument pursuant to Rule 1:6-2 but rather requests this court consider the appeal on its merits.

7

On appeal, plaintiff argues the first arbitration agreement does not meet New Jersey's requirements for the clear, knowing, and voluntary waiver of his constitutional right to a jury trial, and Rokt's offer regarding a second arbitration agreement extinguished the earlier arbitration agreement. He further maintains the first arbitration agreement is unenforceable because neither Rokt nor Justworks signed it and because it was predicated on a continuing relationship between Rokt and Justworks, which they no longer maintain. Plaintiff also asserts the court erred by dismissing the case without prejudice rather than staying the litigation pending arbitration.

"We review de novo the trial court's judgment dismissing the complaint and compelling arbitration." Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020). "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretive analysis of the trial . . . court[] unless we find it persuasive." Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019)).

"The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, and the nearly identical New Jersey Arbitration Act [(NJAA)], N.J.S.A. 2A:23B-1 to -32,

enunciate federal and state policies favoring arbitration." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014). Pursuant to the FAA, courts must "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Id. at 441 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

In reviewing orders compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also Flanzman, 244 N.J. at 133 ("[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002))). Arbitration, as a favored means for dispute resolution, is not, however, "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

In determining whether a valid agreement to arbitrate exists, we apply "state contract-law principles." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006); see also Kernahan, 236 N.J. at 317-18. Indeed, we "cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts." Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003). Under those principles, "[a]n arbitration agreement is valid only if the

 A-2824-24

parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). Thus, a key inquiry is whether the parties actually and knowingly agreed to arbitrate their dispute. Id. at 322; see also Atalese, 219 N.J. at 442.

That inquiry begins with the language of the arbitration clause itself. To reflect a mutual assent to arbitrate, the terms must be "sufficiently clear to place a[n] [individual] on notice that [they are] waiving a constitutional or statutory right . . . ." Atalese, 219 N.J. at 443. "[A]lthough a waiver-of-rights provision need not 'list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights,' employees should at least know that they have 'agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.'" Id. at 447 (second alteration in original) (quoting Garfinkel, 168 N.J. at 135).

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444; see also Flanzman, 244 N.J. at 137. Stated differently, "[n]o magical language is required to accomplish a waiver of rights in an arbitration agreement." Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016). If, "at least in some general and sufficiently broad way," the

10

language of the clause conveys arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Atalese, 219 N.J. at 447; see also Arafa v. Health Express Corp., 243 N.J 147, 172 (2020) (finding a jury trial waiver "was knowing and voluntary in light of the . . . broad agreement to resolve 'all disputes' between the parties through binding arbitration"); Martindale, 173 N.J. at 81-82, 89 (upholding an arbitration clause stating "all disputes relating to [the party's] employment . . . shall be decided by an arbitrator" and that party "waive[d their] right to a jury trial").

In the employment setting particularly, an arbitration "provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim. Generally, we determine a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument." Leodori, 175 N.J. at 302. "[T]o enforce a waiver-of-rights provision[,] . . . the Court requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." Id. at 300 (quoting Garfinkel, 168 N.J. at 135). "Although not strictly required, a party's signature to an agreement is the customary and perhaps surest indication of assent." Id. at 306-07. "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve [themselves] of [their] burdens.'

A-2824-24

The onus [i]s on [the] plaintiff to obtain a copy of the contract in a timely manner to ascertain what rights [they] waived by beginning the arbitration process." Skuse, 244 N.J. at 54 (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)) (internal quotation marks omitted).

## A.

Plaintiff contends the WEA's arbitration provision is deficient and fails to meet New Jersey's requirements for a clear, knowing, and voluntary waiver of his right to a jury trial because it "did nothing to explain to [him] how arbitration differs from litigation in court," as required under Atalese.[3]  Citing a criminal case addressing the waiver of a jury trial in favor of a bench trial, plaintiff asserts a knowing waiver would require information about how jurors are selected, how many must agree for a verdict, and what replaces the jury.[4]  He also highlights "the . . . practical differences between employment arbitrations and jury trials,"

___

[3]  Additionally, for the first time in his reply brief, plaintiff argues defendants fraudulently induced him into agreeing to arbitrate "by intentionally failing to disclose the dramatic disadvantages to employees [in] bringing claims against their employers in arbitration."  Raising an issue for the first time in a reply brief is improper, and we generally will not consider such an issue.  L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014) (noting "[a]n appellant may not raise new contentions for the first time in a reply brief").

[4]  See State v. Blann, 217 N.J. 517 (2014).

A-2824-24

which the WEA agreement's arbitration clause failed to advise him of, including that: discovery is more limited in arbitration; arbitrators are more likely than juries to find for the employer than the employee; arbitrators tend to award less money to employees; and arbitrators are more likely than jurors to be white, male, and management-oriented.[5]

An arbitration agreement's waiver-of-rights language must be "clear and unambiguous." Atalese, 219 N.J. at 445. However, "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444. "Arbitration clauses . . . will pass muster when phrased in plain language that is understandable to the reasonable consumer." Ibid. The Atalese Court reiterated: "We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration." Id. at 446-47. However, it held an agreement must "at least in some general and sufficiently broad way, . . . explain that the plaintiff is giving up [their] right to bring [their] claims in court or have a jury resolve the dispute." Id. at 447.

---

[5] Plaintiff relies on a labor policy analysis in support of this aspect of his argument. See Katherine V.W. Stone & Alexander J.S. Colvin, The Arbitration Epidemic: Mandatory Arbitration Deprives Workers and Consumers of Their Rights, Econ. Pol'y Inst. 19 (2015), https://files.epi.org/2015/arbitration-epidemic.pdf.

A-2824-24

Here, the plain language in the WEA's arbitration provision clearly and unambiguously signaled to plaintiff he was waiving his right to pursue his discrimination claims in court, which he agreed to by signing the agreement. The provision specifically states "[b]y this arbitration agreement, you give up your right to trial by jury of any claim you may have against [Rokt] or Justworks," explaining in unmistakable terms there would be no court or jury trial to resolve disputes between the parties. (Emphasis added). The provision also notes the parties "agree to use binding arbitration as the sole and exclusive means to resolve all disputes . . . including, but not limited to, disputes regarding termination of employment." (Emphasis added).

Moreover, the WEA agreement provides: "You specifically waive and relinquish your right to bring a claim against [Rokt] and/or Justworks, in a court of law." (Emphasis added). Thus, the WEA's arbitration provision satisfies the requirements of Atalese. See 219 N.J. at 445; see also Martindale, 173 N.J. at 96 (upholding an arbitration clause because it, in part, stated the plaintiff "agreed to waive her right to a jury trial in any action or proceeding relat[ed] to [her] employment" and "that all disputes relat[ed] to [her] employment . . . shall be subject to arbitration" (internal quotation marks omitted)).

Furthermore, we are unpersuaded by plaintiff's reliance on State v. Blann, 217 N.J. 517. Blann arose in the context of a criminal trial where the Court addressed what must be explained to a defendant before waiving a jury trial. Id. at 518. Our Supreme Court has not applied Blann outside the criminal setting, and we decline to do so here. Likewise, plaintiff has provided no controlling authority for the proposition the arbitration agreement had to provide information regarding employee success rates in the arbitration forum. The language of the arbitration agreement, and, in particular, plaintiff's explicit waiver of his right to a jury trial, were sufficient, and the trial court did not err in finding the agreement satisfied Atalese.

B.

Plaintiff further claims Rokt's "offer" of a second arbitration agreement, which he did not sign, "extinguished" the arbitration provision contained in the WEA agreement. Plaintiff points to two decisions from the Sixth Circuit and Kentucky Court of Appeals,[6] which held the subsequent presentation of a new

---

[6] See GGNSC Louisville Hillcreek, LLC v. Est. of Bramer, 932 F.3d 480, 487 (6th Cir. 2019); Golden Gate Nat'l Senior Care, LLC v. Rucker, 588 S.W.3d 868, 871 (Ky. Ct. App. 2019).

A-2824-24

arbitration agreement to nursing home patients upon re-admission nullified previously signed agreements.

"A proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify," and it "must be based upon new or additional consideration." Cnty. of Morris v. Fauver, 153 N.J. 80, 100 (1998). "Such modification can be proved by an explicit agreement to modify, or, . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." Id. at 99. Additionally, "[u]nilateral . . . actions made after an agreement has been reached or added to a completed agreement clearly do not serve to modify the original terms of a contract, especially where the other party does not have knowledge of the changes, because knowledge and assent are essential to an effective modification." Id. at 100.

"The elements of a novation are: (1) a previously valid contract; (2) an agreement to make a new contract; (3) a valid new contract; and (4) an intent to extinguish the old contract." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n, 414 N.J. Super. 453, 466 (App. Div. 2010). To find a novation, "there must be a clear and definite intention on the part of all concerned that [novation] is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed." Id. at 467 (quoting Sixteenth Ward Bldg. & Loan Ass'n

of Newark v. Reliable Loan Mortg. & Sec. Co., 125 N.J. Eq. 340, 342-43 (E. & A. 1939)). "[S]uch an intention need not be shown by express words to that effect, but . . . may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter." Sixteenth Ward Bldg. & Loan Ass'n of Newark, 125 N.J. Eq. at 343. "Because intent is the primary inquiry, the issue of whether there was a novation is generally a question of fact . . . ." Wells Reit II-80 Park Plaza, LLC, 414 N.J. Super. at 467.

The presentation of a new arbitration agreement to an employee, that is never signed by that employee, does not automatically void the original arbitration agreement unless the actions of the parties clearly demonstrate an intent to abandon or replace the original agreement. That was not present here. In this case, plaintiff refused to sign the agreement prior to consulting with his attorney and ultimately never signed it. Even if we assume defendants intended to replace the original agreement, there was never a meeting of the minds by both parties. This also was not a novation, as the parties never agreed to enter into a new, binding contract. We are unaware of any controlling authority in the context of an employment agreement where an original arbitration agreement can be voided by the mere presentation of a new proposed agreement. Moreover,

plaintiff's refusal to sign the new arbitration agreement negates any possible intent on his part to agree to "extinguish" the initial arbitration agreement.

C.

Plaintiff next argues the WEA's arbitration provision is unenforceable because neither Rokt nor Justworks ever signed it. He asserts the WEA agreement constitutes a bilateral contract because it purported to require him, Rokt, and Justworks to arbitrate disputes amongst each other. Thus, plaintiff contends the WEA's arbitration provision constitutes an unenforceable illusory promise because it required only him to sign it and thereby allowed Rokt and Justworks to reserve the right to go to court.

Additionally, plaintiff contends Rokt's failure to sign the WEA agreement violates the modification and integration clauses of his employment contract with Rokt. Thus, plaintiff argues Rokt failed to provide the "consent in writing" required for the modification of his employment contract's terms. Plaintiff further notes when Rokt's counsel approached him with the second arbitration agreement, it was already signed by a representative of Rokt, which, he avers, indicates Rokt knew any arbitration agreement entered into after plaintiff signed his employment contract was a modification of that contract and required written consent to amend.

18

"The standard applied by courts in determining third-party beneficiary status is 'whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts. . . .'" Rieder Cmtys., Inc. v. Twp. of N. Brunswick, 227 N.J. Super. 214, 222 (App. Div. 1988) (quoting Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 77 (E. & A. 1940)). "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." Ibid. "The principle that determines the existence of a third[-]party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982) (footnote omitted).

Here, Rokt is a third-party beneficiary to the WEA agreement plaintiff signed. The agreement specifically identifies Rokt as plaintiff's "Worksite Employer" and contains language stipulating disputes between plaintiff and "[Rokt] and/or Justworks," as well as their "owners, directors, officers, managers, employees, or agents," are subject to "binding arbitration." The explicit inclusion and references to Rokt throughout the WEA agreement as

plaintiff's "Worksite Employer," despite Rokt not being a signatory to the agreement, demonstrates a clear intent by the parties and Justworks to confer the right to compel arbitration in disputes with plaintiff upon Rokt.

The court did not err in compelling plaintiff to arbitrate his claims against defendants under the WEA agreement despite neither Rokt nor Justworks being signatories to it because Rokt was a third-party beneficiary. Rokt's status as a beneficiary does not trigger the modification requirements in plaintiff's employment contract, which governs only the bilateral relationship between plaintiff and Rokt. The modification and integration clauses of the employment contract require written consent for changes to "this letter agreement," meaning the employment contract itself, not for entirely separate contracts entered into between plaintiff and other entities such as Justworks. Moreover, even if the WEA agreement is viewed as modifying the employment contract and Rokt is a "putative actual party" to the agreement as plaintiff suggests, plaintiff signed the WEA, which is a writing, and Rokt clearly expressed an intent to be bound by its terms and conditions, as Justworks was operating on behalf of Rokt "to assist [Rokt] with human resources related matters . . . ." Therefore, the parties consented to amend the employment agreement in writing.

Additionally, plaintiff's contention the WEA's arbitration provision constitutes an unenforceable illusory promise on the grounds it required only his signature, and purportedly allowed Rokt and Justworks to reserve the right to pursue claims in court, is unpersuasive. The agreement clearly states: "[Rokt] and Justworks specifically waive and relinquish their respective rights to bring a claim against [plaintiff] in a court of law." Moreover, arbitration agreements have been found to be binding on employees based on their signatory status alone. See Martindale, 173 N.J. at 81 (holding an arbitration agreement contained in an employment application was valid and enforceable against the plaintiff where plaintiff signed it).

D.

Plaintiff also asserts the WEA arbitration clause cannot be enforced against him, as its applicability was contingent upon the ongoing contractual relationship between Rokt and Justworks. He maintains there is no evidence such a relationship was still in effect at the time Rokt terminated his employment. In support of this argument, plaintiff notes the WEA agreement states, "Justworks will not begin providing services with respect to your employment until the contract between Justworks and [Rokt] becomes effective." He also highlights its arbitration provision stated that by signing the

21

agreement, "[he] on the one hand, and [Rokt] and Justworks, on the other hand, agree to use binding arbitration."

The WEA agreement does state Justworks will not provide services until the contract between Rokt and Justworks is effective, however, there is no clause stating the validity or enforceability of the arbitration provision is contingent on an ongoing business relationship between Rokt and Justworks at the time a dispute arises. Therefore, in the absence of explicit terms in the WEA agreement that ties its enforceability to the ongoing relationship between the parties, Rokt's ability to invoke the WEA's arbitration clause remains unaffected by whether its business dealings with Justworks continue.

E.

Plaintiff alternatively argues the trial court erred by dismissing his case without prejudice rather than staying the litigation pending arbitration. He maintains both the FAA and the NJAA require the court to issue a stay of proceedings, rather than an outright dismissal, upon a determination that arbitration is the appropriate forum. Defendants "have no objection" to the court's order being modified to order the action be stayed pending arbitration.

Under the FAA, if parties are referred to arbitration in "any suit or proceeding," the court "upon being satisfied that the issue involved in such suit

22

or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3; see also Smith v. Spizzirri, 601 U.S. 472, 475-76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration" because "shall" under 9 U.S.C. § 3 "creates an obligation impervious to judicial discretion.").

The NJAA, N.J.S.A. 2A:23B-1 to -36, contains a comparable provision. In pertinent part, it provides:  "If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration."  N.J.S.A. 2A:23B-7(g).  Thus, under both the FAA and the NJAA, when arbitration has been compelled, the appropriate judicial action is to stay the litigation until arbitration is completed.  See Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 567 (App. Div. 2022) (reversing the provision of an order compelling arbitration that dismissed the case with prejudice because a court action should be stayed if it involves "any issue referable to arbitration" under 9 U.S.C. § 3).

23

Accordingly, we remand to the trial court for the entry of an order staying the action pending arbitration.

Affirmed in part, vacated in part, and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2824-24